1   Vicki I. Podberesky (SBN 123220)          Ariel A. Neuman (SBN 241594)
    vpod@aplaw.law                            aneuman@birdmarella.com
2   Dillon Malar (SBN 321325)                 Aharon B. Kaslow (SBN 322769)
    dmalar@aplaw.law                          akaslow@birdmarella.com
3   ANDRUES/PODBERESKY                        BIRD, MARELLA, BOXER,
    818 West 7th Street, Suite 960            WOLPERT, NESSIM,
4   Los Angeles, CA 90017                     DROOKS, LINCENBERG &
    Telephone:   (213) 395-0400               RHOW, P.C.
5   Facsimile:    (213) 395-0401              1875 Century Park East, 23rd Floor
                                              Los Angeles, California 90067-2561
6   Peter Johnson (SBN 252542)                Telephone: (310) 201-2100
    peter@peterjohnsonlaw.com                 Facsimile: (310) 201-2110
7   PETER JOHNSON LAW, P.C.
    409 N. Pacific Coast Hwy, 651             Winston Kevin McKesson (SBN 106068)
8   Redondo Beach, California 90027           LAW OFFICE OF WINSTON K.
    Telephone: (310) 295-1785                 MCKESSON
9   Facsimile: (213) 9319-2907                6080 Center Drive, Ste. 652
                                              Los Angeles, California 90045-1540
10  Attorneys for Defendant                   Telephone: (310) 242-5889
    Sara Soulati
11                                            Attorneys for Defendant
                                              Dr. Ronald S. Weaver

12

### UNITED STATES DISTRICT COURT

13

### CENTRAL DISTRICT OF CALIFORNIA

14

15

16  UNITED STATES OF AMERICA,         Case No. 19-cr-527-ODW

17          Plaintiff,                **DEFENDANTS SARA SOULATI AND
                                      DR. RONALD S. WEAVER'S JOINT
18      vs.                           NOTICE OF MOTION AND MOTION
                                      TO SUPPRESS AND SEVER;
19  RONALD SEYMOUR WEAVER,            REQUEST FOR AN EVIDENTIARY
                                      HEARING; DECLARATION OF VICKI
20  SARA SOULATI, JOHN                I. PODBERESKY; DECLARATION OF
    CLAUDIUS WEAVER, RONALD           ARIEL A. NEUMAN; EXHIBITS
21  ARTHUR CARLISH, HOWARD
    KEITH ELKIN, WOLFGANG             DATE:    May 9, 2022
22  SCHEELE, AND NAGESH               TIME:    10:00 AM
    SHETTY,                           CTRM:    5D
23          Defendant.                JUDGE:   Hon. Otis D. Wright

24

25

26

27

28

1    **PLEASE TAKE NOTICE THAT** on May 9, 2022, at 10:00 a.m., or as soon

2    thereafter as the matter may be heard in the courtroom of the Honorable Otis D.

3    Wright II, United States District Court Judge, located at 350 W. 1st Street, Los

4    Angeles, California 90012, Courtroom #5D, 5th Floor, Defendants Sara Soulati and

5    Dr. Ronald S. Weaver, by and through their counsel of record, will jointly move this

6    Court for:

7        1.    An order suppressing all evidence obtained under the 633 Aerick Street

8    search warrant based upon the government's flagrant disregard for the search warrant

9    protocols for filtering of attorney-client and attorney work product privileged material,

10   in violation of the Fourth and Sixth Amendments of the U.S. Constitution.

11       2.    An order, pursuant to Federal Rule of Criminal Procedure 14(a), severing

12   Ms. Soulati and Dr. R. Weaver from Defendants Dr. Ronald A. Carlish, Dr. Wolfgang

13   Scheele, Dr. Howard Elkin, and Dr. Nagesh Shetty ("the Cardiologist") on the basis

14   that the Cardiologists have improperly reviewed and used Ms. Soulati's and Dr. R.

15   Weaver's privileged material to develop and inform a defense strategy which is

16   antagonistic to both Ms. Soulati and Dr. R. Weaver.

17       3.    An order for an evidentiary hearing regarding the government's failure to

18   follow the search protocols set forth in the 633 Aerick Street search warrant and the

19   Prosecution Team's possession and production of privileged material to all co-

20   defendants, to determine exactly how and why the Prosecution Team possessed,

21   reviewed and produced the privileged material, and whether additional remedies are

22   appropriate.

23       This Motion is based on this Notice of Motion, the Memorandum of Points and

24   Authorities, the accompanying Declaration of Vicki I. Podberesky and the exhibits

25   thereto, the accompanying Declaration of Ariel A. Neuman and the exhibits thereto,

26   the Indictment, the search warrant executed on 633 Aerick Street, Inglewood,

27   California and such other and further argument and evidence as may be presented to

28

---

**DEFENDANTS SOULATI AND R. WEAVER'S JOINT MOTION TO SUPPRESS EVIDENCE, SEVER
DEFENDANTS, AND REQUEST FOR AN EVIDENTIARY HEARING**

the Court at the hearing on this matter.

DATED:  February 7, 2022

Respectfully submitted,

ANDRUES/PODBERESKY,
A Professional Law Corporation


By:  /s/ Vicki I. Podberesky
     VICKI I. PODBERESKY

DATED:  February 7, 2022

PETER JOHNSON LAW, P.C.


By:  /s/ Peter Johnson
     PETER JOHNSON

Attorneys for Defendant
Sara Soulati

DATED:  February 7, 2022

BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS, LINCENBERG &
RHOW, P.C.


By:  /s/ Ariel A. Neuman
     ARIEL A. NEUMAN

Attorneys for Defendant
Ronald Seymour Weaver

**DEFENDANTS SOULATI AND R. WEAVER'S JOINT MOTION TO SUPPRESS EVIDENCE, SEVER DEFENDANTS, AND REQUEST FOR AN EVIDENTIARY HEARING**

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................... 1

II.   CHRONOLOGY OF EVENTS ....................................................... 2

    A.   THE INDICTMENT ............................................................. 2

    B.   THE 633 AERICK STREET SEARCH WARRANT ............. 3

    C.   THE PROSECUTION TEAM'S POSSESSION OF PRIVILEGED MATERIAL AND PRODUCTION OF PRIVILEGED MATERIAL TO CO-DEFENDANTS ......................................... 4

    D.   DISCLOSURE OF THE PRIVILEGE INVASION ................ 5

    E.   THE GOVERNMENT'S FAILURE TO CLAW-BACK THE PRIVILEGED MATERIAL ................................................. 9

III.  ARGUMENT ................................................................................ 10

    A.   THE GOVERNMENT'S FLAGRANT DISREGARD FOR THE SEARCH WARRANT PROTOCOLS REQUIRES SUPPRESSION OF ALL SEIZED MATERIAL ................... 10

        1.   Suppression is Warranted Based on the Government's Failure to Conduct a Filter Search Until More Than Two Years After the Electronic Material Was Seized ................................. 11

        2.   Suppression Of All Electronically Seized Evidence Is Warranted Based on the Government's Flagrant Disregard for the Search Warrant Filter Protocols ................................................. 14

    B.   AT A MINIMUM, THIS COURT SHOULD ORDER SEVERANCE OF DEFENDANTS ....................................... 18

    C.   AN EVIDENTIARY HEARING IS NECESSARY TO UNDERSTAND THE FULL EXTENT AND IMPACT OF THE GOVERNMENT'S INVASION OF THE PRIVILEGE ......... 21

IV.  CONCLUSION ........................................................................... 24

**DEFENDANTS SOULATI AND R. WEAVER'S JOINT MOTION TO SUPPRESS EVIDENCE, SEVER DEFENDANTS, AND REQUEST FOR AN EVIDENTIARY HEARING**

# TABLE OF AUTHORITIES

## CASES

*In re U.S.'s Application For A Search Warrant To Seize & Search Elec. Devices From Edward Cunnius,* 770 F. Supp. 2d 1138 (W.D. Wash. 2011)...................................11

*Matter of Search of ODYS LOOX Plus Tablet Serial No. 4707213703415 In Custody of United States Postal Inspection Serv., 1400 New York Ave NW, Washington, DC*, 28 F. Supp. 3d 40 (D.D.C. 2014) ...............................................................................12

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009) ............................................14

*Nordstrom v. Ryan*, 762 F.3d 903 (9th Cir. 2014)........................................................15

*Patterson v. Illinois*, 487 U.S. 285 (1988)....................................................................14

*See In re Nextel Cellular Tel.*, 2014 WL 2898262 (D. Kan. June 26, 2014) ..............11

*United States v. Abrams*, 615 F.2d 541 (1st Cir. 1980)................................................13

*United States v. Chen*, 979 F.2d 714 (9th Cir. 1992) ...................................................10

*United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010) ..11

*United States v. Cote*, 72 M.J. 41 (A.F. Ct. Crim. App. 2013) ....................................12

*United States v. Danielson*, 325 F.3d 1054 (9th Cir. 2003) .........................................15

*United States v. Debbi*, 244 F. Supp. 2d 235 (S.D.N.Y. 2003)....................................11

*United States v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004) ........................................18

*United States v. Flores-Calvillo,* 571 F.2d 512 (9th Cir. 1978)...................................22

*United States v. Haynes*, 216 F.3d 789 (9th Cir. 2000)................................................15

*United States v. Hsia,* 81 F. Supp. 2d 7 (D.D.C. 2000)................................................22

*United States v. Leonti,* 326 F.3d 1111 (9th Cir. 2003) ...............................................22

*United States v. Marshank*, 777 F. Supp. 1507 (N.D. Cal. 1991) ...............................15

*United States v. Medlin*, 842 F.2d 1194 (10th Cir.1988) .............................................11

*United States v. Metter*, 860 F. Supp. 2d 205 (E.D.N.Y. 2012)...................................12

*United States v. Morrison*, 449 U.S. 361 (1981)..........................................................15

**DEFENDANTS SOULATI AND R. WEAVER'S JOINT MOTION TO SUPPRESS EVIDENCE, SEVER DEFENDANTS, AND REQUEST FOR AN EVIDENTIARY HEARING**

*United States v. Neill*, 952 F.Supp. 834 (D.D.C. 1997) .......................................... 14, 22

*United States v. Rettig*, 589 F.2d 418 (9th Cir. 1978) .................................................... 11

*United States v. Singleton,* No. 02-2142, 2002 WL 31716636 (10th Cir. Dec. 4, 2002) ................................................................................................................................ 22

*United States v. Sullivan*, No. CR 17-00104 JMS-KJM, 2020 WL 1815220 (D. Haw. Apr. 9, 2020)................................................................................................................ 22

*United States v. Tamura,* 694 F.2d 591 (1982) ............................................................ 13

*United States v. Throckmorton*, 87 F.3d 1069 (9th Cir. 1996).................................... 19

*United States v. Walters*, 913 F.2d 388 (7th Cir. 1999) ................................................ 19

*United States v. White*, 887 F.2d 267 (D.C. Cir. 1989)................................................. 19

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) ....................................................... 14

*Williams v. Woodford*, 384 F.3d 567 (9th Cir. 2004).................................................... 15

*Zafiro v. United States*, 506 U.S. 534 (1993) ............................................................... 18

## **RULES**

Federal Rule of Criminal Procedure 14(a) .................................................................... 18

**DEFENDANTS SOULATI AND R. WEAVER'S JOINT MOTION TO SUPPRESS EVIDENCE, SEVER DEFENDANTS, AND REQUEST FOR AN EVIDENTIARY HEARING**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

On or about December 3, 2019, the Prosecution Team made a production to all defendants of electronic documents seized from servers, desktop computers, and a hard-drive during the execution of a search warrant at 633 Aerick Street, Inglewood, California, 90301 ("633 Aerick Street Warrant").  The electronic documents, numbering approximately 88,000, were produced in native format with no Bates numbers ("December 2019 Native Production").  The Prosecution Team represented that the documents in the production consisted of "non-privileged, in-scope electronic documents."  This was not true.

The December 2019 Native Production included thousands of attorney-client and attorney work product privileged documents for which Sara Soulati, Global Cardio Care Inc. ("GCC"), Dr. Ronald S. Weaver, and Ronald Seymour Weaver M.D., Inc. ("RSW") held individual and overlapping privileges.  Had the government followed the detailed filter protocols set forth in the 633 Aerick Street Warrant, the possession of such documents by the Prosecution Team would have not occurred, and the subsequent dissemination of the materials to all defendants would have never followed.  Rather, it appears that the government entirely abandoned its obligations under the warrant and reviewed and produced the seized material without first having the materials screened by the Filter Team.  The result is that both the Prosecution Team and the Cardiologist Defendants (Doctors Wolfgang Scheele, Howard Elkin, Ronald Carlish and Nagesh Shetty) have had access to these privileged materials, with the Cardiologist retaining an unknown amount of the material.  The Prosecution Team has, to date, provided no explanation of how the impermissible disclosure occurred.[1]

---

[1] Dr. John Weaver's counsel also received the material, but at this time, it is unclear whether he ever reviewed it or maintained it.  Dr. John Weaver has also held a joint defense privilege with his brother Dr. R. Weaver.  Accordingly, severance from Dr. J. Weaver is not sought through this motion.

Ms. Soualti and Dr. R. Weaver ("Moving Defendants") now move this Court for an order suppressing all evidence seized pursuant to the 633 Aerick Street Warrant.  Both the Prosecution Team and the Cardiologists have had access to their joint and individual privileged material, and the prejudice from this invasion into the privilege is substantial.  The Cardiologists have reviewed and used these privileged materials to inform their defense.  Indeed, the information contained in the privileged material is now inextricably intertwined in the defense strategy that the Cardiologists seek to employ at trial; a strategy that is antagonistic to Ms. Soulati and Dr. R. Weaver.  The Prosecution Team has also had access to this privileged material, and the Moving Defendants are requesting that the Court order an evidentiary hearing to determine exactly how and why the Prosecution Team possessed, reviewed and produced the privileged material, and whether any further remedy is appropriate.

Finally, whether or not the Court suppresses some or all of the evidence seized under the 633 Aerick Street Warrant, the defendants in this case must be severed.  The Cardiologists have seen, reviewed, and used the Moving Defendants' privileged material.  The material has been in their possession since 2019, and despite efforts of varying success to claw-back this material, the prejudice caused to Ms. Soulati and Dr. R. Weaver by the government's breach cannot be undone.  The Cardiologists seek to use the privileged information in a manner that is antagonistic to the Moving Defendants.  Such prejudice can only be remedied by separate trials.

## II.    CHRONOLOGY OF EVENTS

### A.    THE INDICTMENT

On September 11, 2019, Sara Soulati and Dr. Ronald Weaver were indicted on conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 (Count 1). The Moving Defendants are also charged with health care fraud in violation of 18 U.S.C. § 1347 (Counts 11 and 12 for Ms. Soulati and Counts 13-17 for Dr. R. Weaver).  Ms. Soulati and Dr. R. Weaver are charged along with five other co-

1   defendants, all of whom are medical doctors.  Ms. Soulati was the owner and operator
2   of GCC, a medical services administration company, as well as majority owner and
3   operator of GCC Imaging, LLC ("GCC Imaging"), a diagnostic testing company.
4   GCC provided administrative services to Dr. R. Weaver's medical practice, RSW.
5   GCC, GCC Imaging, and RSW were all located at 633 Aerick Street.  The Indictment
6   alleges that Ms. Soulati, Dr. R. Weaver, and their co-defendants conspired to provide
7   and bill for Enhanced External Counter Pulsation (EECP) treatments and diagnostic
8   testing that were not medically necessary.

9   **B.    THE 633 AERICK STREET SEARCH WARRANT**

10        On January 10, 2018, United States Magistrate Judge Patrick J. Walsh signed a
11   search warrant for 633 Aerick Street.  The search warrant allowed the government to
12   seize essentially all medical, financial, and business records from January 1, 2012
13   related to GCC, GCC Imaging, and RSW.  Ex. A[2] at Attachment B-1, ¶ 1 (633 Aerick
14   Street Search Warrant).  The search warrant allowed the government to make forensic
15   copies of any digital devices at the location that contained such records.  *Id.* at
16   Attachment B-1, ¶ 1(b).  As to digital information, the search warranted allowed the
17   government to "conduct the search only by using search protocols specifically chosen
18   to identify only the specific items to be seized under" the warrant.  *Id.* at Attachment
19   B-1, ¶ 4(b).  The search warrant provided that after the completion of the search, "the
20   government shall not access digital data falling outside of the items to be seized absent
21   further order of the Court."  *Id.* at Attachment B-1, ¶ 4(b)(viii).

22        The search warrant also contained a section of specific and detailed protocols
23   for the handling of potentially privileged information "in order to avoid unnecessary
24   disclosures of any privileged attorney-client communications."  *Id.* at Attachment B-1,
25   Sec. III, ¶ 7.  The search warrant required that:

26

27   _____

28   [2] All lettered exhibits referenced herein are attached with the concurrently filed
     Declaration of Vicki I. Podberesky.

the Search Team will search for digital devices capable of being used to facilitate the subject offenses or capable of containing data falling within the scope of the items to be seized. The Privilege Review Team will then review the identified digital devices as set forth herein. The Search Team will review only digital device data which has been released by the Privilege Review Team.

*Id.* at Attachment B-1, Sec. III, ¶ 11.  The Privilege Review Team and the Search Team were required to "complete both stages of the search discussed herein as soon as is practicable but not to exceed 180 days from the date of execution of the warrant." *Id.* at ¶ 13. The search warrant required the Privilege Review team to search "a list of 'privilege key words' […] on the digital devices, to include specific words like [attorneys] Angela Machala, David Scheper, Ariel Neuman, and Matthew Umhofer or their email addresses, and generic words such as 'privileged' or 'work product.'" *Id.* at Attachment B-1, Sec. III, ¶ 14.  The search warrant further provided that "[d]ocuments or data that are identified by this initial review as not potentially privileged may be given to the Search Team." *Id.*

On January 11, 2018, the search warrant was executed for 633 Aerick Street. During the search, the government imaged the contents of three servers, as well as multiple other computers and external hard drives. Ex. B at 4 (January 11, 2018 FBI 302).  The imaged devices included "a file server containing office files such as PDF, Excel, Word documents" and "computers of some of the management personnel at GCC." *Id.* at 3-4.

## C.   THE PROSECUTION TEAM'S POSSESSION OF PRIVILEGED MATERIAL AND PRODUCTION OF PRIVILEGED MATERIAL TO CO-DEFENDANTS

On October 29, 2019, the Prosecution Team sent a letter to all defense counsel enclosing the names of the patients referenced in the Indictment by initial.  Ex. C (October 29, 2019 Culbertson Letter).  In the letter, the Prosecution Team offered to

1  provide a copy of "electronic records seized during the search warrant executed at 633

2  Aerick Street." *Id.*  The letter instructed defense counsel to provide a blank hard drive

3  to FBI Special Agent Duncan Suh, a member of the Prosecution Team, in order to

4  receive a copy of the electronic records. *Id.*

5      On December 3, 2019, the Prosecution Team returned the hard drives sent by

6  counsel for Co-Defendant Nagesh Shetty and prior counsel for Ms. Soulati with a

7  cover letter stating that the hard drives included **"non-privileged, in-scope electronic**

8  **documents"** from servers, desktop computers, and a hard-drive located at 633 Aerick

9  Street.  Ex. D (October 29, 2019 Culbertson Letter).  The same production was made

10 to other co-defendants in the case on or about the same date.  The documents were

11 produced in native format, without Bates numbering or any other means of

12 identification. ("December 2019 Native Production").

13     On June 16, 2020, approximately six months later, the government produced to

14 counsel for Dr. R. Weaver approximately 88,000 documents consisting of electronic

15 data images from the file server or devices seized from GCC pursuant to the 633

16 Aerick Street Warrant, for purposes of conducting a privilege review.  Ex. E, Dkt. No.

17 236.  These 88,000 documents were Bates numbered.  Declaration of Ariel A.

18 Neuman ("Neuman Decl."), Ex. 1.

19     On November 16, 2020, the government notified defense counsel that the

20 documents in the December 2019 Native Production would be reproduced in a

21 Relativity load file format.  Ex. F at 2 (November 16, 2020 Culbertson Letter).  The

22 government represented that since the December 2019 Native Production, "the

23 government ha[d] uploaded the Search Warrant E-docs to Relativity and applied a

24 bates labels." *Id.*  The letter stated the hard drives containing the re-produced

25 documents could be picked up the next day from Special Agent Duncan Suh. *Id.*

26 **D.     DISCLOSURE OF THE PRIVILEGE INVASION**

27     On December 21, 2020, DOJ Filter Attorney Bennet Starnes sent a letter to Ms.

28

**DEFENDANTS SOULATI AND R. WEAVER'S JOINT MOTION TO SUPPRESS EVIDENCE, SEVER DEFENDANTS, AND REQUEST FOR AN EVIDENTIARY HEARING**

1    Soualti's counsel admitting for the first time that the December 2019 Native

2    Production had been produced without prior screening by the Filter team.  Ex. G

3    (December 21, 2020 Starnes Letter).  Filter Attorney Starnes stated that:

> the Prosecution Team previously produced documents from the GCC premises search warrant to all defendants in native format, due to technical difficulties in processing. The material was later processed and imaged.  The Filter Team then reviewed the data prior to providing the imaged material to the Prosecution Team. The Filter Team identified 2,721 documents as Potentially Protected Material. The remaining non-Potentially Privileged Material was then released to the Prosecution Team, who produced the materials to you on November 20, 2020.  *Id.*

10   DOJ Filter Attorney Starnes did not provide an explanation as to how or why the filter

11   protocols were not followed.  The letter did not copy counsel for Dr. R. Weaver and

12   made no mention of material over which Dr. R. Weaver may have had a potential

13   claim of privilege.  *Id.*  The letter also divulged that filter protocols had also failed

14   with respect to GCC emails produced by Google in response to another search

15   warrant.  Specifically, FBI Special Agent Duncan Suh had reviewed "eight documents

16   that he believed may be Potentially Protected Material" in the production of GCC

17   emails produced by Google in response to a search warrant.  *Id.*  The documents were

18   returned to the Filter Team and it was represented that Agent Suh deleted them from

19   his computer.  *Id.*

20        That same day, DOJ Filter Attorney Starnes sent a letter to counsel for all other

21   defendants, including for Dr. R. Weaver, notifying them that potentially privileged

22   material was "inadvertently"[3] produced to them as part of the native file production

23

24   ---
24   [3] While DOJ Filter Attorney Starnes characterized the production of potentially
25   privileged material as *inadvertent*, nothing about the circumstances suggests that it
     was.  As set forth *infra*, in the defense request for an evidentiary hearing, a myriad of
26   questions remain to be answered regarding the government's failure to abide by the
27   protocol set forth in the search warrant—Did the Prosecution Team or the Filter team
     maintain possession of the seized electronic material immediately following the
28   search?  How did the Prosecution Team determine that December 2019 Native

and requesting they delete the potentially privileged material.  Ex. H (December 21, 2020 Starnes Letter to Co-Defendants).  On December 25, 2020, counsel for Dr. R. Weaver responded to DOJ Filter Attorney Starnes asking why he had not been included on the letter notifying Ms. Soulati of the potential privilege breach when the 633 Aerick Street Warrant allowed for the seizure of documents related to Dr. R Weaver's medical practice located at that location.  Neuman Decl., Ex. 3 (December 25, 2020 Neuman Email).  Mr. Neuman has no record of a response to this email from the Filter Team.  Neuman Decl. at ¶ 4.

On January 5, 2021, counsel for Ms. Soulati sent a letter to DOJ Filter Attorney Starnes setting forth detailed questions in an effort to obtain clarification as to how the attorney-client privilege breach occurred.  Ex. I (January 5, 2021 Podberesky Letter).  The letter sought answers as to how and why the Prosecution Team came to possess and produce the December 2019 Native Production including thousands of attorney-client privileged documents without a filter process having been performed.

On January 28, 2021, DOJ Filter Attorney Starnes responded that the December 2019 Native Production **had not** originated from the Filter Team and that the 2,721 Potentially Protected documents had not been identified until the Filter Search Terms were run on Relativity in August 2020, **over two years later than the 180-day limit** provided by the search warrant.  Ex. J (January 28, 2021 Starnes Letter).  DOJ Filter Attorney Starnes also stated that the Filter Team was preparing to release an additional 2,207 documents present in the December 2019 Native Production that returned hits for the filter search terms but that the Filter Team had determined to be

---

Production did not contain privileged material, as represented in its letter to defense counsel?  When was the Filter Team review of the December 2019 Native Production conducted?  If it was conducted **after** the release of the December 2019 Native Production, why and how did that occur?  How was that review conducted?  These questions and more need to be answered to determine whether the erroneous production of privileged material was truly inadvertent or the product of flagrant disregard for the court ordered protocol.

**DEFENDANTS SOULATI AND R. WEAVER'S JOINT MOTION TO SUPPRESS EVIDENCE, SEVER DEFENDANTS, AND REQUEST FOR AN EVIDENTIARY HEARING**

1  non-privileged.  DOJ Filter Attorney Starnes offered to allow Ms. Soulati to conduct a
2  review of the material before the release.  Counsel for Ms. Soulati accepted that offer.

3       On March 11, 2021, counsel for Ms. Soulati, sent an email to DOJ Filter
4  Attorney Starnes requesting additional clarification of the answers provided in the
5  January 28, 2021 letter.  Ex. K (March 11, 2021 Malar Email).  On March 31, 2021,
6  DOJ Filter Attorney Starnes replied by letter and stated all questions had been
7  answered in the January 28, 2021 letter and did not provide any further clarification.
8  Ex. L (March 31, 2021 Starnes Letter).

9       On February 15, 2021, Ms. Soulati provided a privilege log for the 2,721
10  Potentially Protected documents, which asserted privilege over 2,513 of the
11  documents.  Podberesky Decl. at ¶ 14.  Of the 2,207 documents the Filter Team had
12  determined to be non-privileged, Ms. Soulati found 493 of the documents to be
13  privileged and provided the Filter Team with a log of those documents on May 12,
14  2021.  Podberesky Decl. at ¶ 15.

15       Separately, Dr. R. Weaver was reviewing the government's production of his
16  privileged material.  On December 15, 2020, Dr. R. Weaver asserted privilege over
17  6,255 files that the government had seized from his personal email, and provided DOJ
18  Filter Attorney Starnes with a privilege log for this material.  Neuman Decl., Ex. 2.
19  On March 1, 2021, Dr. R. Weaver supplemented his privilege assertions after
20  identifying an additional set of privileged documents that the government had seized.
21  Neuman Decl., Ex. 4.

22       Dr. R. Weaver and Ms. Soulati also identified jointly privileged documents that
23  the government had seized, and subsequently produced to the Prosecution Team and
24  every other co-defendant.  On February 15, 2021, Ms. Soulati provided DOJ Filter
25  Attorney Starnes with a joint privilege log, asserting privilege over 865 documents the
26  government had produced.  Neuman Decl., Ex. 5.

27       The privileged material relates to attorney-client communications spanning the
28

**DEFENDANTS SOULATI AND R. WEAVER'S JOINT MOTION TO SUPPRESS EVIDENCE, SEVER
DEFENDANTS, AND REQUEST FOR AN EVIDENTIARY HEARING**

period of time prior to the investigation of this case, through and including communications with counsel retained to represent Ms. Soulati, Dr. R. Weaver, GCC, GCC Imaging and RSW, up through the time the search warrant was executed. Podberesky Decl. at ¶ 16; Neuman Decl. at ¶ 6.  Some of those communications were shared between Ms. Soulati, Dr. R. Weaver and their respective counsel under a common interest or joint defense agreement.  Podberesky Decl. at ¶ 16; Neuman Decl. at ¶ 6.  Some of those communications were shared between Ms. Soulati, Dr. R. Weaver and their respective counsel under a common interest or joint defense agreement.  In no event were the communications meant for or intentionally shared with any of the Cardiologists, their counsel, or with the government.

## E.      THE GOVERNMENT'S FAILURE TO CLAW-BACK THE PRIVILEGED MATERIAL

On November 18, 2021, the Cardiologists filed a motion to compel the production of the material over which Ms. Soulati and Dr. R. Weaver had asserted privilege and which the government had attempted to claw-back a year earlier.  The Cardiologists and their counsel claimed the privileged material contained exculpatory *Brady* material for their clients.  *See* Cardiologist Mot. to Compel; Dkt. 335 at 4-5. The Cardiologists argued that the privileged material would exculpate them while inculpating Ms. Soulati and Dr. R. Weaver, and articulated a number of defense theories they believed the privileged material would support.  *Id.* at 1-2.  In essence, the Cardiologists seek to use Ms. Soulati's and Dr. R. Weaver's privileged material against them.

In discussions with the Cardiologists' counsel, it became clear they still possessed certain of the privileged material.  Accordingly, and in response to the Cardiologists' motion, counsel for Ms. Soulati sent a letter to all the Cardiologists requesting that they delete and destroy all copies of the privileged material produced to them by the government in the December 2019 Native Production. Ex. M

(December 1, 2021 Podberesky Letter).  On December 7, 2021, counsel for Dr.
Carlish, David Wiechert, responded on behalf of all the Cardiologists, stating because
the December 2019 Native Production contained no Bates numbering, the
Cardiologists could not represent that all of privileged material had been purged from
their possession.  Ex. N at 1-2 (December 7, 2021 Wiechert Letter).  Mr. Wiechert
also stated that even absent the claw-back issue, counsel for the Cardiologists had
already reviewed and analyzed "many if not most" of the material from the December
2019 Native Production and their review of the privileged documents had informed
the Cardiologists' planned defenses.  *Id.*  Indeed, during oral argument on the
Cardiologists' motion to compel on January 24, 2022, counsel for Dr. Scheele, Evan
Jenness, echoed the statements from Mr. Wiechert's letter regarding the impossibility
of the government's claw-back procedure and stated that the non-Bates stamped
December 2019 Native Production including the privileged material had already been
used in trial preparation.  Ex. O at 17:19-25 (Transcript of January 24, 2022 Hearing).
The clear message from the Cardiologists is that their defense is very much based
upon Ms. Soulati's and Dr. R. Weaver's privileged documents impermissibly
provided to them by the government.

## III.   ARGUMENT

**A.   THE GOVERNMENT'S FLAGRANT DISREGARD FOR THE
SEARCH WARRANT PROTOCOLS REQUIRES SUPRESSION OF
ALL SEIZED MATERIAL**

The government's failure to the follow the search warrant protocols, presents a
Fourth Amendment issue.  While the exclusionary rule generally only requires
suppression of evidence that is obtained in violation of a warrant, "in cases where
there is a 'flagrant disregard' for the terms of the warrant, the district court may
suppress *all* of the evidence, including evidence that was not tainted by the violation."
*United States v. Chen*, 979 F.2d 714, 717 (9th Cir. 1992) (emphasis added) (*citing*

*United States v. Medlin*, 842 F.2d 1194, 1199 (10th Cir.1988)); *see also United States v. Rettig*, 589 F.2d 418, 423 (9th Cir. 1978) (suppressing all evidence where agents "substantially exceeded any reasonable interpretation of its provisions"); *United States v. Debbi*, 244 F. Supp. 2d 235, 238 (S.D.N.Y. 2003) (setting an evidentiary hearing to determine "whether this is one of those rare cases in which […] there must be a blanket suppression of everything seized" under the warrant).

Here, the government flagrantly disregarded the terms of the 633 Aerick Street Warrant first by not conducting a Filter Team Search of the electronic material within the 180 day period provided for in the warrant, and second by releasing to the Prosecution Team and co-defendants thousands of privileged communications.

### 1.     Suppression is Warranted Based on the Government's Failure to Conduct a Filter Search Until More Than Two Years After the Electronic Material Was Seized

The government flagrantly disregarded the time limits set forth in the search warrant and conducted searches two years after the time permitted; there is no evidence the government received a court approved extension to the warrant.  Courts have ordered wholesale suppression of evidence seized under a warrant for government failures to follow search warrant review protocols and routinely deny warrants which fail to provide specific review protocols.  *See In re Nextel Cellular Tel.*, 2014 WL 2898262, at *14 (D. Kan. June 26, 2014) (denying search warrant application because "search protocol" failed to adequately describe search methodology); *In re U.S.'s Application For A Search Warrant To Seize & Search Elec. Devices From Edward Cunnius,* 770 F. Supp. 2d 1138, 1150 (W.D. Wash. 2011) (denying application which contained none of the "procedural safeguards" recommended by the Ninth Circuit in *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1176 (9th Cir. 2010) ("*CDT III*")); *Matter of Search of ODYS LOOX Plus Tablet Serial No. 4707213703415 In Custody of United States Postal*

**DEFENDANTS SOULATI AND R. WEAVER'S JOINT MOTION TO SUPPRESS EVIDENCE, SEVER DEFENDANTS, AND REQUEST FOR AN EVIDENTIARY HEARING**

*Inspection Serv., 1400 New York Ave NW, Washington, DC*, 28 F. Supp. 3d 40, 44 (D.D.C. 2014) (denying search warrant for failure to include adequate search protocol). In *United States v. Metter*, 860 F. Supp. 2d 205 (E.D.N.Y. 2012), the court ordered wholesale suppression of all electronic evidence seized where, fifteen months after the initial seizure, the government had not yet "conducted its review of the evidence seized and imaged to determine whether any of that imaged evidence fell outside the scope of the search warrant." *Id.* at 211. The court explained that although the warrants allowing the off-site search of the imaged hard drives were reasonable, "[t]he point at which the government faltered [was] its delay in reviewing the imaged evidence." *Id.* at 214. The court acknowledged that "there is no established upper limit as to when the government must review seized evidence," and that other cases have found a "delay of several months between the seizure of electronic evidence and the completion of the government's review of that evidence" to be reasonable. *Id.* at 215. However, the court noted that no authority justified the government's retention of electronic data "with no plans whatsoever to begin review of that data to determine whether any irrelevant, personal information was improperly seized." *Id.* (italics in original). The court held that suppression was appropriate because the "government's blatant disregard for its responsibility" was "unreasonable." *Id.*

Similarly, in *United States v. Cote*, 72 M.J. 41 (A.F. Ct. Crim. App. 2013), the court analyzed the government's failure to comply with the deadline requirement for review expressly set forth in the warrant. There, the warrant specified that electronic devices or storage media would be searched within 90 days unless the government obtained an extension for "good cause." *Id.* at 42. Despite the explicit terms of the warrant, the government did not conduct its search for almost two years, nor did it obtain an extension from the court. *Id.* The court held that the evidence found in the belated search was inadmissible because the government did not establish that the

1    violation of the 90-day period was so trivial as to be reasonable under the

2    circumstances. *Id.* at 46.

3        *Metter* and *Cote* recognized that the government abandons its responsibility to

4    mitigate the intrusion on privacy resulting from over-seizure when it fails to properly

5    search and separate out the non-seizable information. *See United States v. Tamura,*

6    694 F.2d 591, 595 (1982) ("[T]he wholesale seizure for later detailed examination of

7    records not described in a warrant ... has been characterized as 'the kind of

8    investigatory dragnet that the fourth amendment was designed to prevent.'") (quoting

9    *United States v. Abrams*, 615 F.2d 541, 543 (1st Cir. 1980)).  Such a failure is

10   unreasonable within the meaning of the Fourth Amendment, and thus the fruits of the

11   eventual search may be suppressed.

12       Here, the 633 Aerick Street Warrant contained two distinct time limits relating

13   to the government's search, both of which the government failed to follow.  First,

14   within 180 days of execution of the warrant, the Search Team was required to

15   complete a search using the use of search terms to determine whether the seized

16   devices and data contained material "within the list of items to be seized."  Ex. A at

17   Attachment B-1, Sec. II, ¶ 4.   Second, the search warrant required that "the Privilege

18   Review Team and the Search Team shall complete both stages of the search discussed

19   herein as soon as is practicable but not to exceed 180 days from the date of execution

20   of the warrant" and that "[t]he government will not search the digital device(s) beyond

21   this 180-day period without first obtaining an extension of time order from the Court."

22   *Id.* at Attachment B-1, Sec. III, ¶ 16. It appears that the government blatantly

23   disregarded these directives.  The Filter Team actually ran search terms on the

24   material seized from 633 Aerick Street on August 19, 2020, ***more than two years***

25   ***after*** the 180-day time limit expired.  Ex. J.  While the government has referenced

26   nebulous "technical delays," it has failed to provide any detail as to why the Filter

27   Team procedures were not completed until two years after the search warrant required

28

**DEFENDANTS SOULATI AND R. WEAVER'S JOINT MOTION TO SUPPRESS EVIDENCE, SEVER**
**DEFENDANTS, AND REQUEST FOR AN EVIDENTIARY HEARING**

1    they be conducted.  The government's failure to comply with these time requirements

2    can only be described as a flagrant.  Consequently, all items seized under the warrant

3    should be suppressed.

4          **2.**      **Suppression Of All Electronically Seized Evidence Is**

5                       **Warranted Based on the Government's Flagrant Disregard for**

6                       **the Search Warrant Filter Protocols**

7          Here, the Prosecution Team had access to the Moving Defendants' attorney-

8    client privilege material despite protocols ordered by the magistrate judge that were

9    designed to keep such material out of the Prosecution Team's hands.  Indeed, the

10    whole point of a Filter Team is to avoid having such material available to the

11    Prosecution Team.  "The attorney-client privilege is the oldest of the privileges for

12    confidential communications known to the common law."  *Upjohn Co. v. United*

13    *States*, 449 U.S. 383, 389 (1981).  "By assuring confidentiality, the privilege

14    encourages clients to make full and frank disclosures to their attorneys, who are then

15    better able to provide candid advice and effective representation.  This, in turn, serves

16    broader public interests in the observance of law and administration of justice."

17    *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108 (2009) (internal citations and

18    quotation marks omitted).  Accordingly, the law is loathe to violate this privilege and

19    "[o]nce an accused has a lawyer, a distinct set of constitutional safeguards aimed at

20    preserving the sanctity of the attorney-client relationship takes effect."  *Patterson v.*

21    *Illinois*, 487 U.S. 285, 290 n. 3 (1988).  "It is clear that government interference with a

22    defendant's relationship with his attorney may render counsel's assistance so

23    ineffective as to violate his Sixth Amendment right to counsel and his Fifth

24    Amendment right to due process of law."  *United States v. Irwin*, 612 F.2d 1182, 1185

25    (9th Cir.1980). "[S]ubstantial questions of fundamental fairness are raised where, in

26    connection with a criminal prosecution, the government invades the privilege."

27    *United States v. Neill*, 952 F.Supp. 834, 839 (D.D.C. 1997).

28

**DEFENDANTS SOULATI AND R. WEAVER'S JOINT MOTION TO SUPPRESS EVIDENCE, SEVER**
**DEFENDANTS, AND REQUEST FOR AN EVIDENTIARY HEARING**

1     An intrusion by the government into an attorney-client relationship in order to

2  obtain confidential information may be deemed a violation of a defendant's Sixth

3  Amendment right to effective assistance of counsel.  *See Nordstrom v. Ryan*, 762 F.3d

4  903, 910 (9th Cir. 2014) ("When the government deliberately interferes with the

5  confidential relationship between a criminal defendant and defense counsel, that

6  interference violates the Sixth Amendment right to counsel if it substantially

7  prejudices the criminal defendant.") (citing *Williams v. Woodford*, 384 F.3d 567, 584-

8  85 (9th Cir. 2004) and *United States v. Irwin*, 612 F.2d 1182, 1186-87 (9th Cir.

9  1980)).  In such situations, a court may suppress evidence gathered as a result of the

10  communication or, in egregious cases where the prejudice cannot otherwise be cured,

11  dismiss the indictment.  *See United States v. Haynes*, 216 F.3d 789, 796 (9th Cir.

12  2000);  *United States v. Marshank*, 777 F. Supp. 1507, 1521-22 (N.D. Cal. 1991).  *See*

13  *also United States v. Morrison*, 449 U.S. 361, 364 (1981) ("Sixth Amendment

14  deprivations are subject to the general rule that remedies should be tailored to the

15  injury suffered from the constitutional violation and should not unnecessarily infringe

16  on competing interests.").  Under Ninth Circuit precedent, "improper interference by

17  the government with the confidential relationship between a criminal defendant and

18  his counsel violates the Sixth Amendment only if such interference 'substantially

19  prejudices' the defendant."  *United States v. Danielson*, 325 F.3d 1054, 1069 (9th Cir.

20  2003) (citing *Williams,* 306 F.3d at 683).  "Substantial prejudice results from the

21  introduction of evidence gained through the interference against the defendant at trial,

22  from the prosecution's use of confidential information pertaining to defense plans and

23  strategy, and from other actions designed to give the prosecution an unfair advantage

24  at trial."  *Williams*, 306 F.3d at 682.

25     While the government has thus far failed to give an account for how the

26  Moving Defendants' privileged material came to be produced to all of their co-

27  defendants, a review of the privileged material makes clear that the disclosure would

28

**DEFENDANTS SOULATI AND R. WEAVER'S JOINT MOTION TO SUPPRESS EVIDENCE, SEVER
DEFENDANTS, AND REQUEST FOR AN EVIDENTIARY HEARING**

have been impossible but for a flagrant disregard for the search warrant protocols. The protocols were specifically designed to prevent potentially privileged material from being possessed, reviewed and produced to the Prosecution Team.  Ex. A at Attachment B-1, Sec. III.  It is uncontroverted that the December 2019 Native Production contained thousands of documents over which Ms. Soulati and/or Dr. R. Weaver have a claim of attorney-client privilege.  It is also uncontroverted that the *Prosecution Team* possessed the December 2019 Native Production even though it contained privileged material that adherence to the warrant protocol would have prevented from falling into their possession.  It is uncontroverted the *Prosecution Team* made representations about the contents of the December 2019 Native Production.  It is uncontroverted that the *Prosecution Team* then produced the privileged material of Moving Defendants to the rest of their co-defendants.

Had the search warrant protocols been followed, the material seized from 633 Aerick Street would have been transferred to the *Filter Team*, who would have scrubbed the material of potentially privileged documents before releasing the material back to the Prosecution Team, who would then in turn have produced the material to the non-moving co-defendants.  Instead, the *Prosecution Team* ignored the entire filter protocol by keeping possession of the potentially privileged material, and not allowing the Filter Team to conduct a proper review.  It then produced the unfiltered material to the co-defendants in a non-Bates stamped manner that has made subsequent identification and reclamation of the potentially privileged documents incredibly difficult, if not impossible.

The privileged nature of many of these documents is obvious upon even the most cursory review, much less an application of the detailed search term protocol required by the search warrant.  For instance, the December 2019 Native Production included hundreds of emails that are clearly between an attorney and a client, including between Ms. Soulati and her original counsel in this case, Angela Machala,

as well as emails between Dr. R. Weaver and his current counsel, Ariel Neuman. Podberesky Decl. at ¶ 17.  The December 2019 Native Production also includes hundreds of emails and documents with obviously privileged titles such as: "JOINT DEFENSE COMMON INTEREST AGREEMENT[276452].PDF," "Engagement Letter[87788].pdf," "Attorney - Joint Representation Letter 8.7.14[141269].pdf," "RE: ATTORNEY/CLIENT PRIVILEGE, CONFIDENTIAL: Licensing Fees," "Re: Pending Lawsuit: Counsel Required," "RE: CONFIDENTIAL: ATTORNEY/CLIENT PRIVILEGE -- Patient Legal Matter" and "RE: Privileged." *Id.*  Among these documents are detailed legal memoranda drafted by attorneys for Ms. Soulati and Dr. R. Weaver setting forth research and opinions regarding the operations of the companies located at 633 Aerick Street dating from as far back as 2007, well outside the date parameters set forth in the search warrant.  **These documents contain terms that were specifically required to be removed by the Filter Team before the seized material was produced to the Prosecution Team**. Ex. A at Attachment B-1, Sec. III, ¶ 14.  Despite this, when the Prosecution Team made the December 2019 Native Production, the government represented that the production contained "non-privileged, in-scope electronic documents."   The government has thus far completely failed to explain how the Prosecution Team possessed and had access to the privileged material almost two years after the execution of the 633 Aerick Street search warrant, much less how they came to misrepresent the contents of the December 2019 Native Production.  Such a flagrant disregard for the protocols set forth in the search warrant meant to protect the Moving Defendants' attorney-client privilege is at best, grossly negligent, and, at worst, intentional.

Moreover, it is the government's failure to follow the protocols of the 633 Aerick Street Warrant that has thoroughly tainted these entire proceedings.  The government should not be allowed to benefit from any of the fruits of the search

warrant, and all material seized pursuant to the 633 Aerick Street Warrant should be suppressed.

### B.    AT A MINIMUM, THIS COURT SHOULD ORDER SEVERANCE OF DEFENDANTS

As discussed, the government's conduct has allowed the Cardiologists to rummage through the Moving Defendants' privilege material, and now they have devised their defense strategy using all of that material.  Federal Rule of Criminal Procedure 14(a) provides that if the joinder of defendants in an indictment "appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

> A court should grant severance if: there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant.

*Zafiro v. United States*, 506 U.S. 534, 538 (1993).  Severance may also be appropriate where "a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial."  *Id* ; *see also United States v. Fernandez*, 388 F.3d 1199, 1241 (9th Cir. 2004) (part of the consideration in ruling on a severance motion is whether the defendant can show "with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.").

Finally, severance is appropriate in cases where defendants assert mutually antagonistic defenses, as well as in cases where defendants take antagonistic positions on the admission of privileged information in those defenses. "To be entitled to severance on the basis of mutually antagonistic defenses, a defendant must show that the core of the codefendant's defense is so irreconcilable with the core of his own

1   defense that the acceptance of the codefendant's theory by the jury precludes acquittal

2   of the defendant." *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir.

3   1996). For instance, in *United States v. Walters*, 913 F.2d 388 (7th Cir. 1999), two

4   shareholders of a corporation were indicted together on charges of mail fraud, RICO

5   and conspiracy based on participation in a scheme to secretly sign college football

6   players to exclusive representation contracts in violation of amateur eligibility rules.

7   At trial, one of the shareholders, Walters, sought to introduce evidence of the legal

8   advice he and his co-defendant Bloom received before they formed their corporation

9   to show that his actions were taken in good faith. *Id*. at 390-91. Bloom objected to

10  the use of this evidence at trial and moved for a severance. *Id.* at 388, 392. The

11  motion was denied.

12         On appeal, the Seventh Circuit held it was reversible error not to sever the

13  defendants' trials, holding that the defendant who asserted the privilege was clearly

14  prejudiced at the joint trial because he was "forced to observe his own attorneys testify

15  about the intimate discussion to which he had been a party" and because he was

16  denied an opportunity to pursue his own defense. *Id.* In reversing the conviction, the

17  Seventh Circuit observed that the "quick administration of justice" can never justify a

18  joint trial that either deprives one defendant of his right to pursue an advice of counsel

19  defense or deprives the other of his right to maintain the confidentiality of privileged

20  communications. *Id.* at 393. Similarly, *United States v. White*, 887 F.2d 267 (D.C.

21  Cir. 1989) held that the district court erred in allowing a defendant to admit privileged

22  communications over the objection of the co-defendant privilege-holder and noted that

23  the proper course would have been to sever defendants at trial.

24         Severance is necessary even if the Court decides the Moving Defendants'

25  privileged material is not admissible at trial because, having now read the privileged

26  material, the Cardiologists defendants have developed a defense strategy based on that

27  improper review.   Due to the government's failures, counsel for the Cardiologists

28

**DEFENDANTS SOULATI AND R. WEAVER'S JOINT MOTION TO SUPPRESS EVIDENCE, SEVER DEFENDANTS, AND REQUEST FOR AN EVIDENTIARY HEARING**

have now reviewed and analyzed "many if not most" of the Moving Defendants' privileged material.  Ex. N at 1-2.  The Cardiologists explicitly seek to use that attorney-client privileged material as part of their defense.  They are not holders of the privilege and have gained access to this privileged material only through the government's flagrant disregard of the directives set forth in the search warrant.  Having now waded through this privileged material for over a year, the Cardiologists now seek to present a defense, informed by this privileged material and antagonistic to Moving Defendants.  Specifically, the Cardiologists represent that their defense at trial will consist of the following four points, all of which involve the admission of the Moving Defendants' privileged material:

1.     "GCC's administrators manipulated patient medical records without the Cardiologists' knowledge or consent, in order to validate GCC's Medicare billing practices.[4] Thus, any internal discussions the Non-Moving Defendants had with their counsel pertaining to GCC's billing practices would be highly relevant to this defense and is thus Brady material."  Cardiologist Mot. to Compel; Dkt. 335 at 4.

2.     Ms. Soulati and Dr. R. Weaver's assertion of privilege over the seized materials "indicates that the Cardiologists were not participants in the communications reflected therein, evincing that the Cardiologists were not within the inner circle of GCC management that allegedly."  *Id.* at 4-5.

3.     The privileged material reflects Ms. Soualti and Dr. R. Weaver's "efforts to work with counsel to ensure that GCC's was compliant with all prevailing rules and regulations and support their claimed belief that GCC was in compliance, a belief that would trickle down to the Cardiologists who were mere part-time independent contractors, were not involved in developing GCC's policies or procedures, and had no involvement whatsoever in GCC's billing."  *Id.* at 5.

---

[4]     The Cardiologists, like the government, incorrectly conflate Ms. Soulati's entities – GCC and GCC Imaging – and Dr. R. Weaver's entity – RSW – into a single entity they call "GCC."

4.     If the privileged material reflects that Ms. Soulati and Dr. R. Weaver "did not follow the advice of counsel in establishing GCC's protocols, the Cardiologists can present evidence that this critical information was concealed from them by GCC's administrators." *Id.* at 5.

The prejudice to Ms. Soulati and Dr. R. Weaver is compounded by the fact that the Cardiologists' antagonistic defense is founded substantially upon privileged material that the Cardiologists would have otherwise had no knowledge of, or access to, but for the government's flagrant disregard for the procedures set forth in the 633 Aerick Street search warrant protocols.  No procedure can be devised to sanitize from the minds of the Cardiologists' counsel the privileged information they have reviewed.  Moving Defendants will thus be prejudiced so long as they are tried jointly with the Cardiologists.  Documents from the December 2019 Native Production have already been shown to potential witnesses. Ex. O at 17:19-25.  Counsel for the Cardiologists have explicitly explained that their defense is now informed by the privileged materials at issue.

As counsel for the Cardiologists have stated, the bell cannot be unrung.  The Cardiologists have essentially obtained an unfair advantage that they seek to exploit by crafting a defense that is quintessentially antagonistic to the Moving Defendants and have used their privileged communications to do so.  Circumstances unique to this case, require a severance in order to mitigate the prejudice caused by the government's release of privileged material.  This is necessary regardless of whether the Court suppresses the evidence.

## C.     AN EVIDENTIARY HEARING IS NECESSARY TO UNDERSTAND THE FULL EXTENT AND IMPACT OF THE GOVERNMENT'S INVASION OF THE PRIVILEGE

An evidentiary hearing is necessary to determine the full extent of the breach of the Moving Defendants' attorney-client privilege, gauge the full extent of the

1   prejudice caused by the breach, and examine whether further remedies are

2   appropriate.  *See United States v. Flores-Calvillo,* 571 F.2d 512 (9th Cir. 1978)

3   (recognizing that trial court has discretion to order evidentiary hearing); *United States*

4   *v. Leonti,* 326 F.3d 1111, 1122 (9th Cir. 2003) (finding that district court abused its

5   discretion in denying request for evidentiary hearing).  Courts regularly exercise their

6   discretion to hold evidentiary hearings when questions are raised concerning the

7   government's  privileged documents in criminal cases.  *See United States v. Sullivan*,

8   No. CR 17-00104 JMS-KJM, 2020 WL 1815220, at *2 (D. Haw. Apr. 9, 2020)

9   (evidentiary hearing ordered to determine whether taint team protocol prevented

10  potentially privileged materials from reaching prosecution team); *United States v.*

11  *Neill*, 952 F.Supp. 834, 839 (D.D.C. 1997) (evidentiary hearing ordered to determine

12  appropriate remedy for failure of government taint team in preserving privileged

13  documents); *United States v. Singleton,* No. 02-2142, 2002 WL 31716636, at *2 (10th

14  Cir. Dec. 4, 2002) (special master held evidentiary hearing to determine whether

15  privileged information had been shielded from the prosecutorial team); *United States*

16  *v. Hsia,* 81 F. Supp. 2d 7, 8 (D.D.C. 2000) (convening an evidentiary hearing to

17  determine government intrusion into defendant's attorney-client privilege).

18         The Prosecution Team's continued silence as to why it possessed copies of the

19  privileged material almost two years after the search and how it came to produce the

20  privileged material to all co-defendants has left a myriad of unanswered questions.

21  These unanswered questions include, but are not limited to:

22         1.     Who took possession of the 633 Aerick Street Seized Electronic Material

23  after the execution of the search warrant on January 11, 2018?

24         2.     When was the 633 Aerick Street Seized Electronic Material transferred to

25  the Filter Team?

26         3.     Did the Prosecution Team retain copies of the 633 Aerick Street Seized

27  Electronic Material after the data was transferred to the Filter Team?

28

---

**DEFENDANTS SOULATI AND R. WEAVER'S JOINT MOTION TO SUPPRESS EVIDENCE, SEVER
DEFENDANTS, AND REQUEST FOR AN EVIDENTIARY HEARING**

4.      When did the Prosecution Team begin reviewing any of the 633 Aerick Street Seized Electronic Material?

5.      Did members of the Prosecution Team review the 633 Aerick Street Seized Electronic Material before filing the Indictment on September 11, 2019?

6.      How was the 633 Aerick Street Seized Electronic Material reviewed by the Prosecution Team before filing of the Indictment on September 11, 2019?

7.      Were documents from the 633 Aerick Street Seized Electronic Material used in the Grand Jury?

8.      When was the 633 Aerick Street Seized Electronic Material first successfully uploaded to Relativity?

9.      When did the Filter Team begin review of the 633 Aerick Street Seized Electronic Material?

10.     When did the Filter Team first run search terms on the 633 Aerick Street Seized Electronic Material?

11.     When and how did the Filter Team first become aware that the 633 Aerick Street Seized Electronic Material contained privileged materials?

12.     When and how did the Filter Team first become aware that the December 2019 Native Production contained privileged material?

13.     Did the Prosecution Team review the December 2019 Native Production before it was produced to the Defendants?

14.     What members of the Prosecution Team reviewed the December 2019 Native Production before it was produced to the Defendants?

15.     Who decided the December 2019 Native Production should be made without Bates numbers and why?

16.     How did the Prosecution Team determine that the December 2019 Native Production was comprised of "non-privileged, in-scope electronic documents?"

17.     Who made the determination that the December 2019 Native Production

**DEFENDANTS SOULATI AND R. WEAVER'S JOINT MOTION TO SUPPRESS EVIDENCE, SEVER DEFENDANTS, AND REQUEST FOR AN EVIDENTIARY HEARING**

1   was comprised of "non-privileged, in-scope electronic documents?"

2       18.   When was the Filter Team first informed of the December 2019 Native

3   Production?

4       19.   Why did it take two years after the seizure of the material at 633 Aerick

5   Street, for the Filter team to conduct a review?

6       20.   Was the government aware that the December 2019 Native Production

7   contained privileged materials prior to the filing of the October 5, 2020 Updated

8   Status Report? (Dkt. No. 161).

9       21.   Was the government aware that the December 2019 Native Production

10  contained privileged materials prior to the Court's entry of the November 16, 2020

11  Federal Rule of Evidence 502(D) Order? (Dkt. No. 250).

12      The answers to these questions are paramount to determining what occurred and

13  to assist the Court in crafting an appropriate remedy to address the government's

14  complete failure to follow search warrant protocols.  The resulting breach of the

15  attorney-client privilege should not go unaddressed or unpunished.  Depending on

16  what develops from an evidentiary hearing, the Court should consider using all

17  possible remedies to correct the prejudice caused to the Moving Defendants, including

18  suppression of the fruits of the warrant or even dismissal of the Indictment.

### IV.   CONCLUSION

19      For all the forgoing reasons, Ms. Soulati and Dr. R. Weaver respectfully

20  requests that the Court (1) order all material seized during the execution of the 633

21  Aerick Street search warrant suppressed, (2) order the Moving Defendants trial

22  severed from that of the Cardiologists, and (3) order an evidentiary hearing regarding

23  the government's failure to follow the search warrant protocols to determine the

24  appropriate remedy.

25

26

27

28

**DEFENDANTS SOULATI AND R. WEAVER'S JOINT MOTION TO SUPPRESS EVIDENCE, SEVER DEFENDANTS, AND REQUEST FOR AN EVIDENTIARY HEARING**

1   DATED:  February 7, 2022                Respectfully submitted,

2                                            ANDRUES/PODBERESKY,
                                             A Professional Law Corporation
3

4                                    By:  /s/ Vicki I. Podberesky
5                                          VICKI I. PODBERESKY

6   DATED:  February 7, 2022                PETER JOHNSON LAW, P.C.
7

8

9                                    By:  /s/ Peter Johnson
                                           PETER JOHNSON
10
                                           Attorneys for Defendant
11                                         Sara Soulati

12

13  DATED:  February 7, 2022                BIRD, MARELLA, BOXER, WOLPERT,
                                             NESSIM, DROOKS, LINCENBERG &
14                                           RHOW, P.C.

15
                                     By:  /s/ Ariel A. Neuman
16                                         ARIEL A. NEUMAN

17                                         Attorneys for Defendant
                                           Ronald Seymour Weaver
18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS SOULATI AND R. WEAVER'S JOINT MOTION TO SUPPRESS EVIDENCE, SEVER
DEFENDANTS, AND REQUEST FOR AN EVIDENTIARY HEARING**