| | |
|---|---|
| Vicki I. Podberesky (SBN 123220)<br>vpod@aplaw.law<br>Dillon Malar (SBN 321325)<br>dmalar@aplaw.law<br>ANDRUES/PODBERESKY<br>818 West 7th Street, Suite 960<br>Los Angeles, CA 90017<br>Telephone:  (213) 395-0400<br>Facsimile:   (213) 395-0401<br><br>Peter Johnson (SBN 252542)<br>peter@peterjohnsonlaw.com<br>PETER JOHNSON LAW, P.C.<br>409 N. Pacific Coast Hwy, 651<br>Redondo Beach, CA 90027<br>Telephone: (310) 295-1785<br>Facsimile: (213) 9319-2907<br><br>Attorneys for Defendant<br>Sara Soulati | Ariel A. Neuman (SBN 241594)<br>aneuman@birdmarella.com<br>Aharon B. Kaslow (SBN 322769)<br>akaslow@birdmarella.com<br>BIRD, MARELLA, BOXER,<br>WOLPERT, NESSIM,<br>DROOKS, LINCENBERG &<br>RHOW, P.C.<br>1875 Century Park East, 23rd Floor<br>Los Angeles, CA 90067-2561<br>Telephone: (310) 201-2100<br>Facsimile: (310) 201-2110<br><br>Winston Kevin McKesson (SBN 106068)<br>LAW OFFICE OF WINSTON K.<br>MCKESSON<br>6080 Center Drive, Ste. 652<br>Los Angeles, CA 90045-1540<br>Telephone: (310) 242-5889<br><br>Attorneys for Defendant<br>Dr. Ronald S. Weaver |

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RONALD SEYMOUR WEAVER, SARA SOULATI, JOHN CLAUDIUS WEAVER, RONALD ARTHUR CARLISH, HOWARD KEITH ELKIN, WOLFGANG SCHEELE, AND NAGESH SHETTY,<br><br>Defendant. | Case No. 19-cr-527-ODW<br><br>**DEFENDANTS SARA SOULATI AND DR. RONALD S. WEAVER'S JOINT REPLY IN SUPPORT OF MOTION TO SUPPRESS AND SEVER; REQUEST FOR AN EVIDENTIARY HEARING**<br><br>DATE:       May 11, 2022<br>TIME:        10:00 AM<br>CTRM:       5D<br>JUDGE:     Hon. Otis D. Wright |

## Contents

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT .................................................................................................. 1

    A. THE GOVERNMENT'S FLAGRANT VIOLATION OF THE SEARCH WARRANT PROTOCOLS REQUIRES SUPPRESSION .................................................................................. 1

        1. Uncontroverted Facts Demonstrate that the Prosecution Team Had Access to Moving Defendants' PPM ................................. 3

        2. The Government Blatantly Violated the Requirement that the Filter Process Be Completed in 180 Days and Has Provided No Explanation for the Violation ................................................................. 4

    B. AT A MINIMUM, AN EVIDENTIARY HEARING IS NECESSARY TO DETERMINE WHAT OCCURRED AND TO RESOLVE SIGNIFICANT DISPUTED FACTUAL ISSUES ................. 5

        1. The Filter Team Has Provided Conflicting Accounts of the Botched Filter Process .......................................................... 6

        2. The Government Has Provided No Explanation for the Prolonged and Unreasonable Delay in Revealing the Disclosure of PPM to the Moving Defendants ................................................................. 7

        3. The Government Has No Explanation for the Complete Failure of the CART System to Identify PPM ..................................................... 8

    C. THE FILTER TEAM'S LITIGATION OF SUBSTANTIVE MOTIONS IS WHOLLY INAPPROPRIATE ........................................... 8

    D. SEVERANCE IS THE APPROPRIATE REMEDY FOR THE EXTRAORDINARY PREDICAMENT CREATED BY THE GOVERNMENT'S ACTIONS ............................................................. 10

III. CONCLUSION .......................................................................................... 10

|     |     |
| --- | --- |
| 1   | I.   INTRODUCTION |

Nearly 5,000 un-Bates stamped potentially privileged documents ("PPM") belonging to Defendants Sara Soulati and Dr. Ronald Weaver (the "Moving Defendants") obtained from the search of 633 Aerick Street were possessed by the Prosecution Team and then released to the Cardiologist Defendants. The Prosecution Team, which filed no response to the instant motion, has chosen to remain silent and provides no explanation about its production, possession, and almost certain review of the PPM. This botched production and the government's refusal to come clean about what happened has created a tangled web of legal conundrums that have severely jeopardized Moving Defendants' right to a fair trial in this case.

The Filter Team's Opposition succeeds only in raising new and troubling questions about the government's handling of the PPM. Despite having ample opportunity to address the issues raised in Moving Defendants' Motion, the Prosecution Team has not even attempted to refute the fact that it had access to nearly 5,000 of the Moving Defendants' PPM for at least ten months, and very likely longer. The government's failure to provide a clear explanation of its actions with regard to the production and possession of the PPM requires an evidentiary hearing to determine the full extent of the prejudice to the Moving Defendants and for the Court to craft an appropriate remedy. At a minimum, the Prosecution Team's production of those materials to the Cardiologist Defendants independently requires severance of those defendants.

II.   ARGUMENT

A.   THE GOVERNMENT'S FLAGRANT VIOLATION OF THE SEARCH WARRANT PROTOCOLS REQUIRES SUPPRESSION

On January 18, 2018, the government executed a search warrant at 633 Aerick Street, the address of Global Cardio Care Inc., GCC Imaging, LLC, and Ronald Seymour Weaver M.D., Inc. The search warrant set forth detailed filter protocols "in

order to avoid unnecessary disclosures of any privileged attorney-client communications." February 7, 2022 Declaration of Vicki Podberesky[1] (Dkt. No. 396-1), Ex. A at Attachment B-1, Sec. III, ¶ 7. Under the terms of the search warrant, the Filter Team and Prosecution Team were required to "complete both stages of the search discussed herein as soon as is practicable but not to exceed 180 days from the date of execution of the warrant," *i.e.* by July 17, 2018. *Id.* at Attachment B-1, Sec. III, ¶ 13. The government cannot defend the fact that the filter process required to be completed within 180 days was not completed until almost two years after the search, in November 2019. *See* April 4, 2022 Declaration of Bennett Starnes at ¶ 3 (Dkt. No. 430-2).

In December 2019, the Prosecution Team produced at least 4,928 un-Bates stamped potentially privileged documents belonging to Dr. R. Weaver and Ms. Soulati to the Cardiologist Defendants. The Filter Team does not and cannot defend the fact that the Prosecution Team had access to the PPM for a minimum of 10 months -- from at least October 2019 to August 2020. It took the government a year to even acknowledge that a violation of the terms of the search warrant had occurred and to begin to take steps to try to correct the improper release of PPM belonging to Dr. R. Weaver and Ms. Soulati. How such a bungled production occurred remains a mystery. Indeed, the government's Opposition raises more questions about what occurred than it answers.

What is clear is that the Filter Team's utter failure to filter the PPM, to follow the time requirements of the search warrant, and the Prosecution Team's prolonged possession and review of the Moving Defendants' PPM constitutes a "flagrant disregard" for the search warrant protocol. *See United States v. Chen*, 979 F.2d 714, 717 (9th Cir. 1992). These violations alone warrant suppression of the 633 Aerick Street electronic material.

---

[1] Hereinafter referred to as "Podberesky Decl." All Exhibits referenced in this brief are attached with the Podberesky Decl.

1. **Uncontroverted Facts Demonstrate that the Prosecution Team Had Access to Moving Defendants' PPM**

On October 29, 2019, the Prosecution Team offered to provide a copy of "electronic records seized during the search warrant executed at 633 Aerick Street" and represented these documents could be obtained immediately from Prosecution Team member, FBI Agent Duncan Suh. Ex. C (October 29, 2019 Culbertson Letter). Despite the Prosecution Team's representation that the production included **"non-privileged, in-scope electronic documents"** from 633 Aerick Street, the production included thousands of privileged documents.

In its Opposition, the Filter Team admits that it did not begin "to run quality control searches" on the privilege search terms until November 2019, some 21 months after the search warrant was executed and more than a year after the deadline to complete the filter process had passed.[2] April 4, 2022 Declaration of Bennett Starnes at ¶ 3 (Dkt. No. 430-2). When the actual searches of the seized digital material began remains unanswered. The only information the government provides is a Declaration of FBI Agent Van Nimitsilpa, who indicates that sometime following the execution of the search warrant he was provided a list of search terms, including such terms as "attorney" and "privilege," which he ran on the CART system. "Any documents that did not hit on the search terms were cleared for release to the prosecution team." Nimitsilpa Decl. at ¶ 3. The exact dates these documents were cleared for release to the Prosecution Team are unknown as the government has not disclosed this information. It is uncontroverted, however, that the Prosecution Team possessed and had access to the 633 Aerick Street electronic records, including the 4,928 potentially privileged documents, at least by October 2019, if not sooner.

The 4,928 potentially privileged documents were not identified by the Filter Team – despite its "quality control searches" – until August 19, 2020, when the

---

[2] The search warrant at 633 Aerick Street was executed on January 11, 2018, and the warrant-ordered deadline by which the search was to be completed was July 17, 2018.

documents were searched on Relativity. Ex. J (January 28, 2021 Starnes Letter). Those 4,928 potentially privileged documents had already been released to the Prosecution Team and subsequently to the Cardiologist Defendants in December 2019. Nimitsilpa Decl. at ¶ 5. When exactly the government realized that search warrant protocols had been breached remains unanswered. Notwithstanding the many questions the Starnes Declaration fails to answer, *it conclusively establishes that the Prosecution Team received the 633 Aerick Street electronic records before any government Filter Attorney conducted a search for PPM*.

Based on this timeline, the Prosecution Team definitively had access to the 4,928 potentially privileged documents for at least 10 months, from October 29, 2019 until August 19, 2020. Given that the Indictment in this case was returned on September 11, 2019, with an original trial date of November 12, 2019 and re-setting of that date to June 9, 2020, (Dkt. Nos. 65 and 125), the Prosecution Team was almost certainly reviewing the electronically seized material from 633 Aerick Street for most of the ten months it was in their possession. No remedy short of suppression is appropriate given the Prosecution Team's prolonged access to and almost certain review of the Moving Defendants' PPM.

## 2. The Government Blatantly Violated the Requirement that the Filter Process Be Completed in 180 Days and Has Provided No Explanation for the Violation

The Filter Team's Opposition is silent on the government's complete failure to comply with the search warrant's requirement that the filter review be completed within 180 days of the search. Filter Attorney Starnes states that he performed filter searches on the seized material in November 2019, at least 659 days after the search. Starnes Decl. at ¶ 3. At some unknown time prior to that, two other filter agents Special Agent Van Nimitsilpa and Filter Agent Ken Koyama also reviewed the seized digital material. Nimitsilpa Decl. at ¶ 4. The government has provided no information as to when these agents conducted their filter review and has offered no evidence that

it sought or obtained an extension of the 180-day restriction in which to conduct its search of the seized electronic material.

The government's Opposition makes clear that searches of the seized electronic material were executed well beyond the 180 days set forth in the warrant protocol.

The Filter Team argues that the government's approach to the filter process has not been "prolonged, lackadaisical, or reckless" in a manner that troubled the courts in *United States v. Metter*, 860 F. Supp. 2d 205 (E.D.N.Y. 2012) and *United States v. Cote*, 72 M.J. 41 (A.F. Ct. Crim. App. 2013), yet the Filter Team provides no explanation for why the filter process took almost two years to complete instead of the 180 days required by the search warrant. Nor does it explain why the improper production of 4,928 potentially privileged documents was not identified until more than 10 months after they were released to the government and the Cardiologist Defendants. Having received no explanation for such reckless behavior, this Court should suppress all seized electronic material.

**B.   AT A MINIMUM, AN EVIDENTIARY HEARING IS NECESSARY TO DETERMINE WHAT OCCURRED AND TO RESOLVE SIGNIFICANT DISPUTED FACTUAL ISSUES**

The Moving Defendants have demonstrated that there exist significant disputed factual issues requiring a hearing. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000). The Opposition only serves to highlight those issues and the need for answers. The Filter Team's response to how the Prosecution Team both possessed and released the PPM to the Cardiologist Defendants can be summarized as: We don't know. Opp. at 8:4-9. Such a serious breach of search warrant protocol cannot simply be left unanswered. Likewise other questions remain that demand a response, especially when the impact is so great on the Moving Defendants' Sixth Amendment rights and right to a fair trial. Further disputed factual issues include the conflicting explanations as to how this blunder occurred, the utter lack of diligence in expeditiously remedying the breach of Dr. R. Weaver's and Ms. Soulati's Sixth Amendment right, and the

absolute lack of any response by the Prosecution Team about its possession, access and use of PPM for more than ten months. Given the government's refusal to explain any of these issues, an evidentiary hearing is necessary if the Court is not prepared to suppress the search warrant material on the record before it.

### 1. The Filter Team Has Provided Conflicting Accounts of the Botched Filter Process

The Filter Team has given inconsistent and shifting accounts of the failed filter process. The Filter Team originally blamed unspecified technical problems as the impetus for the un-Bates stamped December 2019 Native Production. See Ex. J at 2 (January 28, 2021 Starnes Letter) ("FBI and DOJ Litigation Support attempted to process, image, and upload the Seized Material, and later the Native Production into Relativity, but initially encountered technical delays."); Ex. H at 1 (December 21, 2020 Starnes Letter) ("First, the Prosecution Team previously produced documents from the GCC premises search warrant to all defendants in native format, due to technical difficulties in processing. The material was later processed and imaged."). It has now shifted its story, stating that the December 2019 Production of un-Bates stamped native documents was made "[i]n order to respond to the defendants' requests for production of discovery as quickly as possible[.]" Filter Opp. at 4:8-9. Indeed, it appears that the government has now jettisoned the excuse of "technical delays," making no mention of any such problems in either the Opposition or supporting declarations. Further confounding the government's shifting tale is its conspicuous omission of all dates when the seized digital material was uploaded, processed, filtered and reviewed in Relativity.³ Agent Nimitsilpa's Declaration omits any dates

---

³ The Declarations of Filter Attorney Starnes and FBI Agent Nimitsilpa raise a host of new questions about how the filter process was conducted. These questions include:
- Why was Agent Nimitsilpa, apparently not a member of the Filter Team, responsible for running the privilege searches in the CART system? Nimitsilpa Decl. at ¶ 3.
- When did Agent Nimitsilpa run the privilege searches? *Id.*
- When did Agent Nimitsilpa clear the material for release to the Prosecution Team? *Id.*
- When did the Prosecution team receive the material? *Id.*

6
**DEFENDANTS SARA SOULATI AND DR. RONALD S. WEAVER'S JOINT REPLY IN SUPPORT OF MOTION TO SUPPRESS AND SEVER; REQUEST FOR AN EVIDENTIARY HEARING**

relating to when either he or Agent Ken Koyama conducted searches and cleared material for release to the Prosecution Team.  The opaque version of events set forth by the Filter Team's Opposition only highlights the need for an evidentiary hearing.

The government has thus far not provided any answer for when the documents were uploaded to Relativity and, more important, how long the 4,928 potentially privileged documents were accessible to the Prosecution Team on Relativity or any other platform.  The Filter Team appears to want to reveal as little detail as possible about the Relativity upload, while formerly a purported upload failure was its primary excuse for this discovery debacle. *The Prosecution Team's absolute silence on this matter, having neither drafted the Opposition nor submitted a single declaration, raises serious suspicions that they have improperly seen and used Dr. R. Weaver's and Ms. Soulati's privileged material in preparing this prosecution.*

### 2. The Government Has Provided No Explanation for the Prolonged and Unreasonable Delay in Revealing the Disclosure of PPM to the Moving Defendants

Besides not being able to explain the disclosure of thousands of privileged documents to the Prosecution Team and the Cardiologist Defendants, the Filter Team has also failed to explain the months long delay between its discovery of the improper production of the PPM and the disclosure of the improper production to the Moving Defendants.  The Filter Team admits that it was aware of the issue by August 19, 2020, yet failed to alert counsel for Ms. Soulati of the issue until December 21, 2020. Ex. J at 2; Ex. H at 1.  The government did not provide contemporaneous notice to Dr. R. Weaver at all, despite the fact that he also held privilege over the PPM.  The looming question is why?[4]

---

- When did Agent Ken Koyama review the results of the privilege searches?  *Id.* at ¶ 4.
- Why did Agent Koyama not discover the obvious PPM not hit on by the search terms?  *Id.*
- What process did Agent Koyama use that failed to uncover the PPM?  *Id.*
- Was material released to the Prosecution team before Agent Koyama's review?  *Id.*

[4] The timing of the Rule 502(d) Order in this matter may offer an explanation for the government's delay.  On November 16, 2020, the Court entered a Rule 502(d) Order stipulated to by the parties.

### 3. The Government Has No Explanation for the Complete Failure of the CART System to Identify PPM

The government has also provided no explanation for how the searches for PPM conducted in the CART system failed so miserably and why the Filter Team did not initially use the Relativity system, which Filter Attorney Starnes refers to as "a document management system commonly used for discovery production and filter reviews." Starnes Decl. at ¶ 4. According to the Nimitsilpa Declaration, Agent Nimitsilpa conducted searches in the CART system for terms including "names of known attorneys and general terms such as 'attorney' and 'privilege'" at some unspecified time between January 2018 and November 2019. Nimitsilpa Decl. at ¶ 3. The results of these searches where then apparently reviewed by FBI Agent Koyama. *Id.* at ¶ 4. Filter Attorney Starnes also conducted similar searches using the CART system in November 2019. Starnes Decl. at ¶ 3. For some unexplained reason, the searches and subsequent reviews failed to find the PPM, despite the fact that a large portion of these documents contain the names of the known attorneys, terms such as "attorney" and "privilege," as well as emails between the Moving Defendants and their trial counsel in this case. Podberesky Decl. at ¶ 17. If the CART system is not capable of identifying emails that contain the exact search terms in the subject line of an email, it clearly is not fit for use to conduct a filter review. An evidentiary hearing is necessary to determine how things went so wrong.

### C.   THE FILTER TEAM'S LITIGATION OF SUBSTANTIVE MOTIONS IS WHOLLY INAPPROPRIATE

The Filter Team's Opposition to the Moving Defendants Motion for Suppression and Severance is wholly inappropriate. The Filter Team, having

---

(Dkt. No. 250). The Order prominently features a provision that effectively immunizes the government from sanction based on the disclosure of PPM. *Id.* at 2:9-17. The government did not inform the Defendants during the negotiation of the Stipulation that it was in fact already aware that there had been a significant disclosure of potentially privileged information, inducing the Defendants to agree to a stipulation while omitting material facts. The government also did not disclose this information to the Court before submitting the proposed Order.

reviewed the PPM, is now making arguments about how knowledge of the privileged information will impact a joint trial of the Defendants. Essentially, the Filter Team is using information that the Prosecution Team should never have seen to prosecute the case against the Defendants and to make arguments about the consistency or inconsistency of the possible defenses advanced by the Defendants. See Filter Opp. at 14:9-17. The government's decision to respond in this manner leaves no doubt that the Filter Team closely collaborated with the Prosecution Team in the preparation of its Opposition, as the arguments are inherently an exercise of trial or prosecution strategy. The wall between the Filter and Prosecution Teams is no more than an illusion.

The filing of an Opposition by the Filter Team is plainly contrary to the role of the Filter Team in this case, or any case. In his declaration in support of the Filter Team's Opposition, Filter Attorney Starnes represented to this Court that the Filter Team in this case maintains independence from the Prosecution Team. Starnes Decl. at ¶ 2. Filter Attorney Starnes has repeatedly represented to this Court that the Filter Team "only conduct[s] the filter review and litigate[s] privilege issues; and are not involved in the prosecution." Declaration of Bennett Starnes in Support of Filter Team's Opposition to Defendants' Application to Refer Certain Discovery Matters to Magistrate Judge, at ¶ 2 (Dkt No. 411); *see also* Declaration of Bennett Starnes in Support of [Filter Team's] Response to Cardiologist Defendant's Joint Motion to Compel Discovery, at ¶ 2 (same) (Dkt. No. 359-1).

Despite all this, the Filter Team is now using information, not otherwise available to the Prosecution Team, to oppose Moving Defendants' Motion. The Filter Team is not just litigating privilege issues, it is prosecuting the case as well; all, in an apparent attempt to obfuscate the Prosecution Team's access to PPM and to isolate the Prosecution Team from the consequences of its actions.

### D. SEVERANCE IS THE APPROPRIATE REMEDY FOR THE EXTRAORDINARY PREDICAMENT CREATED BY THE GOVERNMENT'S ACTIONS

Leaving aside the fact that the Filter Team should never have taken a position on the prosecution of this case, its Opposition glosses over the primary reason the Moving Defendants have requested severance: the Prosecution Team's production of privileged material to the Cardiologist Defendants. The Moving Defendants have clearly articulated that the prejudice necessitating severance flows not only from the Cardiologist Defendants' intention to admit privileged documents at trial, but from the fact that the Cardiologist Defendants have crafted their defense strategy based the Moving Defendants' PPM. The Filter Team admits that the government has created a novel conflict between the Moving Defendants and Cardiologist Defendants by producing PPM to other defendants who are not privilege holders. The novelty of the conflict, and the enormity of its impact, are not, as the Filter Team argues, reasons for this Court to do nothing. Rather, the significant prejudice caused by the government's careless and inexcusable handling of PPM requires remedial action by this Court. Severance is within the discretion of the Court and Rule of Criminal Procedure 14(a) provides that if the joinder of defendants in an indictment "appears to prejudice a defendant or the government, […] sever the defendants' trials, or provide any other relief that justice requires." Under the present circumstances, the unique failings of the government warrant a severance of defendants.

### III. CONCLUSION

For all the forgoing reasons, Ms. Soulati and Dr. R. Weaver respectfully request that the Court order suppression of the seized 633 Aerick Street electronic search warrant material and/or sever the trials of Moving Defendants and the Cardiologist Defendants. Alternatively, the Court should order an evidentiary hearing to determine an appropriate remedy for the government's blatant disregard of filter protocols set forth in the search warrant.

| | | |
|---|---|---|
| DATED: April 27, 2022 | | Respectfully submitted, |
| | | ANDRUES/PODBERESKY, A Professional Law Corporation |
| | By: | /s/ Vicki I. Podberesky |
| | | VICKI I. PODBERESKY |
| DATED: April 27, 2022 | | PETER JOHNSON LAW, P.C. |
| | By: | /s/ Peter Johnson |
| | | PETER JOHNSON |
| | | Attorneys for Defendant Sara Soulati |
| DATED: April 27, 2022 | | BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C. |
| | By: | /s/ Ariel A. Neuman |
| | | ARIEL A. NEUMAN |
| | | Attorneys for Defendant Ronald Seymour Weaver |

11

**DEFENDANTS SARA SOULATI AND DR. RONALD S. WEAVER'S JOINT REPLY IN SUPPORT OF MOTION TO SUPPRESS AND SEVER; REQUEST FOR AN EVIDENTIARY HEARING**