UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION - LOS ANGELES

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. SARA SOULATI, Defendant. | Case No. CR 19-527-ODW<br>Los Angeles, California<br>Monday, October 27, 2025<br>10:18 A.M. to 11:15 A.M. |

# TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE OTIS D. WRIGHT II
UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Appearances: | See Page 2 |
| Deputy Clerk: | Sheila English |
| Court Reporter: | Recorded; CourtSmart |
| Transcription Service: | JAMS Certified Transcription<br>16000 Ventura Boulevard #1010<br>Encino, California 91436<br>(661) 609-4528 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

APPEARANCES:

For the Plaintiff:

United States Attorney's Office
By: KELLY R. CHURNET
300 North Los Angeles Street
Suite 2001
Los Angeles, California 90012
(202) 262-9893
kelly.churnet@usdoj.gov

United States Department of Justice
Criminal Division
By: JORDAN PATTERSON
300 North Los Angeles Street
Suite 2001
Los Angeles, California 90012
(202) 304-2946
jordan.patterson@usdoj.gov

United States Department of Justice
By: SANDOR A. CALLAHAN
300 North Los Angeles Street
Suite 2001
Los Angeles, California 90012
(202) 270-9056
sandor.callahan2@usdoj.gov

For the Defendant:

Peter Johnson Law, P.C.
By: PETER JOHNSON
409 North Pacific Coast Highway
Suite 651
Redondo Beach, California 90277
(310) 295-1785
pete@pjohnsonlaw.com

Andrues Podberesky
By: VICKI I. PODBERESKY
DILLON H. MALAR
818 West 7th Street, Suite 960
Los Angeles, California 90017
(213) 395-0400
vpod@aplaw.law
dmalar@aplaw.law

LOS ANGELES, CALIFORNIA, MONDAY, OCTOBER 27, 2025, 10:18 A.M.

THE CLERK: Calling item one, CR 19-527, *United States of America v. Sara Soulati*.

Counsel, may I have your appearances, please.

KELLY R. CHURNET: Good morning, Your Honor. Kelly Churnet on behalf of the United States. I'm accompanied today by Jordan Patterson and Sandor Callahan.

THE COURT: And good morning to you all.

PETER JOHNSON: Good morning, Your Honor. Peter Johnson on behalf of Sara Soulati. Also with me is Vicki Podberesky and Dillon Malar, and we are -- Ms. Soulati is prepared for a change of plea.

THE COURT: All right. Thank you, and good morning to you. Wouldn't you all be more comfortable seated?

MR. JOHNSON: Sure.

MS. CHURNET: That would be fine, Your Honor.

(Pause.)

THE COURT: All right. Ms. Soulati, before I actually take your plea, I'm going to have to discuss with you a few items. First, I want to make sure that you understand the consequences to you of this decision to plead guilty; I want to give you an opportunity to ask any questions you might have had; and I need to affirm and give myself some comfort in knowing, one, that what you're doing is voluntary on your part, that you haven't been coerced by

anyone or bribed by anyone into pleading guilty. I need to assure myself that you are legally competent to waive all of your constitutional rights and enter a plea of guilty. So I'll be asking you a number of questions to which I would expect to receive a truthful response. Indeed you will be placed under oath as soon as we begin this hearing in earnest.

I'm going to begin by asking you some questions that I certainly would find to be unnecessarily intrusive, but there is a reason that I'm going to get into mental health, your alcohol use, drug use. It is because I don't want to find out several months down the road that this morning you were heavily medicated -- prescription or not, but that you were medicated completely out of your mind and you had no idea what you were doing, which means you're not basically legally competent to waive your rights, that is, your right to a trial and your right to have the prosecution prove their case and each and every element of their case beyond a reasonable doubt.

So I am going to go over these things not because I'm at all curious about the answers to any of the questions that I'm going to ask you. I'm only interested in your legal competency to waive your constitutional rights. We're going to get in very quickly and get out. Okay?

If at any time during the course of this hearing

you hear anything said by anyone that you don't understand, please get clarification. You've got two excellent lawyers next to you. Get clarification from them. Get clarification from me. Do not find yourself as one of these people who walks out of a hearing and a friend, a colleague says, "What happened?" and you don't have a clue; you cannot describe for them what happened. I want you to understand everything that is happening and why. Okay? So please, don't just sit here and go through this thing basically like the potted plant they used to accuse those lawyers of being. Know what this is all about. Be able to evaluate. Be able to consent to whether or not you want this foolishness to continue or not. Be involved. Okay? But I want you to understand what's happening. Okay. You've got two great lawyers; so there's no problem in terms of propriety. It's just a matter of I want you to know what's going on. All right?

Let's see. All right. Let's get moving.

Go ahead and swear our witness.

THE CLERK: Okay.

Please raise your right hand.

SARA SOULATI, DEFENDANT, SWORN

THE CLERK: Thank you.

THE COURT: All right. So would you please for the record state your complete name.

THE DEFENDANT: Sara Soulati.

THE COURT: All right. How old are you, Ms. Soulati?

THE DEFENDANT: 55.

THE COURT: How many years of school have you completed?

THE DEFENDANT: All the way to my bachelor's degree.

THE COURT: The question was "completed." So four years of college?

THE DEFENDANT: I'm sorry. Yes.

THE COURT: Okay.

THE DEFENDANT: Four years of college.

THE COURT: Have you been treated recently for any mental illness or addiction to narcotics of any kind?

THE DEFENDANT: No.

THE COURT: Okay. Are you presently under the influence of any drug, medication, or alcoholic beverage of any kind?

THE DEFENDANT: No.

THE COURT: Have you had any drugs, medication, or alcohol within the last 24 hours?

THE DEFENDANT: No.

THE COURT: Have you been prescribed any medication which you have not taken?

THE DEFENDANT: No.

THE COURT: Do you suffer from any mental condition or disability that would prevent you from fully understanding the charges against you or the consequences of your guilty plea?

THE DEFENDANT: No.

THE COURT: All right. That's the end of those.

Are you aware of any reason why we should not go forward with your plea today?

THE DEFENDANT: No.

THE COURT: Okay. All right.

Ms. Podberesky or Mr. Johnson, which one should I address my questions to during the course of this hearing?

MR. JOHNSON: Peter.

THE COURT: All right. I'm not going to call "Peter."

MR. JOHNSON: No. I --

THE COURT: All right.

Have you had an opportunity to speak with your client about these proceedings?

MR. JOHNSON: Yes, I have.

THE COURT: And do you have any reason to believe that your client should not go forward with this plea today?

MR. JOHNSON: I do not.

THE COURT: And do you believe that she is in full possession of her faculties and is competent to proceed?

MR. JOHNSON: I do.

THE COURT: Thank you, sir.

Based upon the statements of the defendant and her counsel, as well as my own observations, I find that she is in full possession of her faculties and is competent to proceed.

Ms. Soulati, have you received a copy of the Indictment, that is, the written statement of charges against you.

THE DEFENDANT: Yes.

THE COURT: All right. You have the right to have the Indictment -- the entire Indictment read to you at this time. Would you like it read to you, or do you give up that right?

THE DEFENDANT: I give up that right.

THE COURT: Thank you.

You also have the following constitutional rights. These are rights that you would be giving up by pleading guilty.

First, you have the right to plead not guilty to any offense charged against you and to persist in that plea.

You have the right to a speedy and public trial.

You have the right to a trial by jury.

At trial you would be presumed to be innocent, and the Government would have to prove beyond a reasonable doubt.

If both you and the Government give up your right to a jury trial, you have the right to be tried by the Court.

You have the right to the assistance of counsel for your defense throughout the proceedings. If you cannot afford counsel, the Court will appoint counsel to represent you free of charge at trial and at every other stage of the proceedings.

You have the right to confront and cross-examine the witnesses against you, that is, to see and hear all the witnesses testify and to have them questioned by your attorney.

You have the right to have witnesses subpoenaed and compelled to come into court to testify on your behalf.

You have the right to testify yourself, on your own behalf.

Conversely, you have the privilege against self-incrimination, that is, you have the right not to testify or incriminate yourself in any way. If you went to trial and decided not to testify, that fact could not be used against you. By pleading guilty, you're giving up that right, and you are incriminating yourself.

Lastly, you have the right to appeal your conviction and your sentence if you go to trial and you are convicted.

Now, have you been advised of all of these rights?

THE DEFENDANT: Yes.

THE COURT: Do you feel that you understand all of them?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about any of these rights?

THE DEFENDANT: No.

THE COURT: Do you require any additional time to speak with your lawyer about these rights?

THE DEFENDANT: No. Thank you.

THE COURT: Do you recall reading these rights as part of your Plea Agreement? And I direct your attention to page 12, paragraph 18.

THE DEFENDANT: Yes.

THE COURT: Okay. And you do not need any additional time to speak with your lawyer about any of your constitutional rights; is that true?

THE DEFENDANT: That's correct.

THE COURT: Okay. If your plea is accepted, you will be incriminating yourself and you will have waived or given up your right to a trial and all of the other rights that I have just described.

Do you give up those rights?

THE DEFENDANT: Yes.

THE COURT: Mr. Johnson, are you satisfied that

each of these waivers is knowingly, voluntarily, and intelligently made?

MR. JOHNSON: Yes, Your Honor.

THE COURT: Do you join and concur in each of the waivers?

MR. JOHNSON: I do.

THE COURT: All right.

All right, ma'am. You're charged in Count -- well, 11 and 12 of the Indictment with health-care fraud in violation of Title 18, United States Code, Section 1347. This is a felony offense.

At this time I'd like to ask one of these prosecutors to state the elements of the offense.

MS. CHURNET: Yes, Your Honor.

The elements are as follows:

First, defendant knowingly and willfully executed a scheme or plan to defraud a health-care benefit program -- namely, Medicare -- or a scheme or plan to obtain money or property owned by or under the custody or control of a health-care benefit program -- namely, Medicare -- by means of material false or fraudulent pretenses, representations, or promises; two, that the defendant acted with the intent to defraud; three, Medicare was a health-care benefit program, and; four, the scheme or plan was executed in connection with the delivery of or payment for health-care benefits, items,

or services.

THE COURT: Ms. Churnet?

MS. CHURNET: Yes, Your Honor.

THE COURT: Sorry.

Ms. Soulati, do you understand the facts that would have to be established by the Government beyond a reasonable doubt in order for you to be convicted on either or both of Counts 11 and 12?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions?

THE DEFENDANT: No. Thank you.

THE COURT: All right. Next, time I'm going to ask the prosecutor to go over the various penalties that you face.

Are you a United States citizen?

THE DEFENDANT: Yes.

THE COURT: All right. Don't take offense. I ask everybody that question because it'll -- it dictates some of the penalties that we're going to talk about and which ones we're going to leave out.

But I'm going to ask the prosecutor to go over the maximum term of imprisonment which could be imposed, the maximum fine which could be levied per charge. There is a mandatory special assessment which I must levy against each felony count. I will ask her to discuss the concept of

supervised release, and there's a number of collateral consequences which follow suffering a felony conviction in terms of limitations on certain civil rights, et cetera. One of the things that we won't need to talk about are the immigration consequences. Okay?

Go ahead, Counsel.

MS. CHURNET: The total maximum sentence for all the -- all the offenses to which the defendant is pleading guilty is 20 years' imprisonment; a 3-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offenses, which is ever [sic] greater; and a mandatory special assessment fee of $200.

With regards to supervised release, the defendant should understand that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant should understand that if he -- she violates one or more of the conditions of supervised release imposed, she may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum that’s stated above.

And lastly, in paragraph 11, the defendant should

understand that by pleading guilty, the defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.

THE COURT: All right. Do you have any questions about anything the prosecutor has just said?

THE DEFENDANT: No. Thank you.

THE COURT: You also understand that parole has been abolished in the federal system, and if you are -- pardon me -- if you are sentenced to prison, you will be released on parole.

Now, do you believe that you've understood everything that's been said so far?

THE DEFENDANT: Yes.

THE COURT: Is there any reason I should not continue with these proceedings and take your plea?

THE DEFENDANT: No.

THE COURT: You will be sentenced under the Sentencing Reform Act of 1984. The United States Sentencing Commission has issued guidelines which judges must consult and take into account but are not required to follow in determining the sentence in a criminal case.

Now, have you and your attorneys talked about how the sentencing guidelines might be applied in your case?

THE DEFENDANT: Yes.

THE COURT: You should understand that regardless of the guidelines I may sentence you to a term of imprisonment for up to the maximum time allowed by law, and in this particular case, that's 10 years per count or a total of 20 years. That does not mean that that is something that is probable, but we must inform you of worst-case scenario, and that's what you've heard. Okay?

Now, in addition to just simply calculation of the guidelines, there are other statutory requirements and considerations that we must make in terms of fashioning a sentence that is fair, reasonable, and certainly tailored to the offense and the occasion and the defendant.

Speaking for myself, I like to know as much about a defendant that I'm about to sentence as is reasonably possible. To assist us in determining an appropriate and reasonable sentence, the probation officers will prepare something called a "Presentence Investigation Report" that really covers most of the major things in one's life, beginning with childhood, and it does give us something of a window on some of the important milestones in an individual's life, both good and bad, things that have helped to develop them as they are today, and it does give us an opportunity to fashion an informed sentence.

Now, in preparation for that report, the probation

officers will generally have an interview with the defendant, and that interview is actually very important. Without that interview, I will not get the detailed report that I will be looking for, and I will be left with you as being someone who has been convicted of these offenses, perhaps as then left with a very large and unsatisfied restitution order, and not a great deal more, and I will have to impose a sentence based upon just that. I think you would like me to consider something more -- a lot more about who you are, what motivated this? -- et cetera -- what is the likelihood of your reoffending?

I would prefer -- if I were in that situation, I would prefer the sentencing judge knowing as much about me as possible, and I would like to know as much about you as possible because, if nothing else, I would like you to leave these premises in June of next year feeling that you had been treated fairly. Okay? So I hope you will go along with the interview. I hope you will discuss with the probation officer anything you feel comfortable in discussing. It will be in writing. It will be a copy to the Government, your lawyers will have a copy, I will have a copy, and that should be as far as it goes.

And I will also -- you will also have an opportunity to speak, to address the Court at the time of your sentencing, which I find to be extremely valuable, god,

almost necessary and -- because to tell you the truth, I have never settled on a sentence until I've first heard from the defendant. So it is important that I hear from you. Aside from the fact that you have the legal right to address the Court at the time of your sentence, it is of immense importance to me as I attempt to fashion something that's fair and reasonable.

So give it some thought, leave the B.S. at home. I'm not interested in you hearing -- hearing you talk about how you apologize to the Court and all that foolishness. So give it some thought. If you wish to -- if you wish to write the entire thing, you can do that as long as it's your thoughts. I know there will be no one here on June 1st than is here now, but still that doesn't make this a comfortable environment. I understand that. So whatever you need to do in order to make yourself comfortable, then fine, do that. Okay?

All right. Let's see.

Let's take a look at the Plea Agreement itself. Let's take a look at pages 18 and 19 of the agreement. Those are the signature pages. And my question is: Does your signature appear on 18 and 19?

I'm going to assume that this is typed in -- "Sara Soulati" -- because it's awfully gorgeous? Did --

THE DEFENDANT: Oh, yes. It's typed in. Yes.

THE COURT: Okay. Next to the date August 26, 2025.

Is this something you prepared?

THE DEFENDANT: Yes. I signed this.

THE COURT: All right. That's all I care about. That's all I care about.

Now, does this written document contain all of the terms of your understanding with the Government? I suppose that there's been some conversations back and forth with the Government, there's been some give and take, et cetera, they had demands, you had demands, and then all -- all of your requirements, both sides have been reduced to writing, and this written Plea Agreement is the result.

Now, does this agreement contain all of the principal points that you considered important, from your standpoint -- have they all been covered in this document, the Plea Agreement?

THE DEFENDANT: Yes.

THE COURT: All right. Excellent.

So the Plea Agreement is, from your standpoint, an accurate memorialization of the understanding or the agreement that you have reached with the Government?

THE DEFENDANT: Yes.

THE COURT: Has anyone made you any promises, representations, or guarantees of any kind in an effort to

get you to plead guilty other than what is contained in this written document?

THE DEFENDANT: No.

THE COURT: Has anyone told you that the Court will impose any specific sentence in the event your guilty pleas are accepted?

THE DEFENDANT: No.

THE COURT: Has anyone attempted in any way to threaten you, a family member, or anyone close to you in an effort to force you to plead guilty in this case?

THE DEFENDANT: No.

THE COURT: Are you pleading guilty voluntarily and of your own free will?

THE DEFENDANT: Yes.

THE COURT: All right.

I want to now talk about a few of the important provisions of the agreement. We'll begin with page 13, and we will begin with paragraph 19, which appears under the heading "Waiver of Appeal of Conviction." There are three primary topics covered in this one paragraph. I'm going to read the first sentence. It says that you understand that with the exception of an appeal based upon a claim that your guilty plea was involuntary, by pleading guilty you are waiving and giving up any right to appeal your convictions on the offenses to which you are pleading guilty.

In English, you retain the right to challenge your conviction on the basis that your guilty plea was involuntary. Other than that, an appeal of your conviction stands little chance of being successful, like I say, unless your argument is that your guilty plea was involuntary. That is expressly reserved and preserved in this Plea Agreement. So, if that is going to be your challenge to your conviction, at least you've got a shot because it says so in your Plea Agreement. Okay?

Now, the other things -- there's other -- two other things. You're not going to be able to argue that the statute with which you are charged having violated and which you are now apparently planning on pleading guilty to, 18 U.S.C. Section 1347 -- you are not going to be able to argue that that statute is unconstitutional. Okay? That is expressly stated in this paragraph of your Plea Agreement. You are waiving the right to argue the constitutionality of the statute of conviction. Okay?

The last thing is that you are acknowledging that the statement of facts that is set forth in this document on page 7, paragraph 13 -- you are acknowledging that the statement of facts is sufficient to support a guilty plea. Apparently, sometime a long time ago someone must have prevailed in arguing that the statement of facts that was discussed in the written Plea Agreement was, I don't know,

kind of sketchy or hastily drafted or didn't contain an awful lot of detail. Well, you are expressly acknowledging that the statement of facts is sufficient to support a guilty plea.

Understand?

THE DEFENDANT: Yes.

THE COURT: All right.

Now let's move on to the next paragraph, paragraph 20.

(Pause.)

THE COURT: All right. A few moments ago the prosector went over various elements of a sentence. She talked about the maximum term of imprisonment which could be imposed. She talked about the maximum fine which could be levied against you. There's also a special assessment which is levied against you, and it's a hundred dollars per felony.

There are also the issue of supervised release. If a term of imprisonment is imposed, then obviously the term of imprisonment is part of the sentence, and the length of that imprisonment is something that is -- the limits are controlled by statute. The rest of it falls within -- largely within the discretion of the sentencing court.

There are a number of conditions that you will have to comply with once you are released from custody and you fall under the supervision of a probation officer. There are

things that you are going to have to comply with. They are generally related to the offense, but all of them are not necessarily related to the offense. Some of them are just generally imposed. Everyone falls within the provisions of some of the general prohibitions or standards. For example, you're not going to be able to commit violation of any laws; you're not going to be able to possess a firearm or ammunition; you're going to have to have regular scheduled meetings with your probation officer; unless it is waived by the Court, you will have to provide a urine specimen on a fairly regular basis for determination to be made as to whether or not you are using drugs -- a number of things like that.

And in this particular case, this paragraph deals with your ability to challenge your sentence and any of the various aspects of your sentence. Your ability to challenge your sentence is keyed to the length of your sentence. Specifically, it provides that, if you are sentenced in accordance with paragraph 17 of the Plea Agreement, that sentence -- paragraph 17 -- and no more, you will basically not have the right to file an appeal of your sentence unless, of course, the Court violates a statute, for example, imposes a sentence that's greater than the statute provides, orders that you pay a fine greater than the law provides, or commits any other violation of the law in the imposition of your

sentence. If the Court does that, of course you have the right to challenge that. Otherwise, if the Court sentences you in accordance with paragraph 17 of the Plea Agreement, then, no. You are relinquishing your right to challenge.

Now, paragraph 17 says that it's an agreement by everyone involved that the appropriate disposition of this case is that the Court impose a sentence of seven months' imprisonment and simultaneously agree that you're going to be credited with time served. There will be one month of home confinement. At the completion of all of this, you will be placed on supervised release for a period of three years with certain conditions that will be fixed by the Court; that there will be a special assessment of $200, and like I said before, that's special assessment is mandated by statute and is limited to $100 per felony; and you will also be ordered to pay restitution in a total amount of $106,178. Okay?

So that is the agreed-upon disposition in this case, and if the Court imposes a sentence that conforms with this agreement, then you will not be able to challenge it -- your -- any aspect of your sentence on appeal.

Is that your understanding?

THE DEFENDANT: Yes.

THE COURT: Okay. Now, these two paragraphs represent limitations on your appellate rights, your rights of appeal. These are valuable rights.

Did you give up -- or agree to the limitations on your rights of appeal after speaking about this issue with your attorneys?

THE DEFENDANT: Yes.

THE COURT: All right. And they explained to you that there would be limitations placed upon your rights of appeal?

THE DEFENDANT: Yes.

THE COURT: And you agree to those limitations freely and voluntarily?

THE DEFENDANT: Yes.

THE COURT: Okay. All right.

MR. JOHNSON: Your Honor, may I briefly interrupt?

THE COURT: Absolutely.

MR. JOHNSON: This might be a good time to go over that this is an 11(c)(1)(C) Plea Agreement, and that's listed on page 2 of the Plea Agreement just so that it's in context.

THE COURT: No. You know what? I agree with you there.

What your attorney is referring to is that you have entered into what is generally referred to as a "binding plea agreement." If the Court agrees to the terms of your settlement agreement -- settlement agreement -- this sentencing agreement -- and I do -- then I am binding myself to sentence you in accordance with the terms of this

agreement. I'm not going to waver from this agreement. You can have some comfort in knowing that what you have agreed to with the Government in terms of what is a reasonable and fair disposition of the case that the Court agrees with that and the Court will sentence you in accordance with your agreement.

I probably made a mess of that, but I hope you understand that all I'm attempting to say is that I'm going to follow your agreement set forth in this document in terms of your sentence.

THE DEFENDANT: Thank you very much, Judge.

THE COURT: No. Thank your lawyers and those lawyers. I had nothing to do with it. But I do agree to be bound by it.

THE DEFENDANT: That's why I'm thanking you.

THE COURT: Okay.

And, yes, I think this was a great time to bring this up and -- because it's probably on the lady's mind. Now it isn't.

All right. Let's see.

(Pause.)

THE COURT: All right. Let's -- all right.

Mr. Johnson, back to the signature page on the Plea Agreement -- 18 and 20 -- for the lawyers -- let me see because I think maybe it's your colleague. Yes. Yes, it is

your colleague. Okay.

Yes. Ms. Podberesky, this is apparently your signature, at least you signed the name -- ooh, that is a beautiful --

MS. PODBERESKY: Nobody can read it.

THE COURT: I don't care. It's gorgeous.

Okay. It appears to be your signature on pages 18 and 20 of the Plea Agreement; correct?

MS. PODBERESKY: That's correct, Your Honor.

THE COURT: Also dated August the 26th of this year, the same date that your client signed the agreement. Any conclusions to be drawn from the fact that you both signed the agreement at the same time? For example, were you in each other's presence at the time?

MS. PODBERESKY: We actually were not. When the actual signatures were made, we had conducted a video call. We've gone over the terms of the agreement both over video and in person, Your Honor.

THE COURT: Excellent. Okay. Good. You answered a number of questions I had. So thank you.

Now, in your opinion, the agreement represents the memorialization of the complete agreement between your client and the Government?

MS. PODBERESKY: Yes, it does.

THE COURT: All right. Good.

Now, I don't care which one of you answers this. I just want to know that the -- one of the defense attorneys reviewed all of the facts of this case and all of the discovery provided by the Government.

MR. JOHNSON: I did, Your Honor.

THE COURT: Excellent. And were those facts and discovery reviewed with your client?

MR. JOHNSON: Yes, Your Honor.

THE COURT: Have you pursued with your client the potential defenses she might have?

MR. JOHNSON: I have, Your Honor.

THE COURT: And has your client been advised concerning the legality or admissibility of any statements or confessions or other evidence that the Government has against her?

MR. JOHNSON: Yes.

THE COURT: To the best of your knowledge, is your client pleading guilty because of any illegally obtained evidence in the possession of the Government?

MR. JOHNSON: She is not.

THE COURT: And did you and your client agree that it was in her best interest to enter this plea?

MR. JOHNSON: We did.

THE COURT: Do you believe that your client is entering into this plea freely and voluntarily with full

knowledge of the charges against her and the consequences of her plea?

MR. JOHNSON: I do.

THE COURT: Have there been any promises, representations, or guarantees made either to you or to your client other than what is stated in the written Plea Agreement?

MR. JOHNSON: No.

THE COURT: Other than what is stated in the written Plea Agreement and other than a general discussion of the guidelines sentencing range and other sentencing considerations, have you given any indication of what specific sentence the Court would impose or convey to your client any promise of a particular sentence in the event the Court accepts her plea? And you can't include what the Court just stated, the representations that the Court made with respect to living up to the 11(c)(1)(C).

MR. JOHNSON: I have not made any additional promises, no.

THE COURT: All right. And the Court has made -- giving you the assurance that the Court will sentence you in accordance with the written sentencing agreement, paragraph 17 of the Plea Agreement. Okay.

THE DEFENDANT: That's correct.

THE COURT: But other than that, has anyone made

you any promises of a particular sentence?

THE DEFENDANT: No.

THE COURT: Okay. Excellent. Thank you.

Are you, ma'am, aware of any reason why the Court should not accept your plea?

THE DEFENDANT: No.

THE COURT: Mr. Johnson, are you aware of any reason why the Court should not accept your client's plea?

MR. JOHNSON: I am not.

THE COURT: And do you, sir, join in the waiver of jury trial and concur in the plea?

MR. JOHNSON: I do.

THE COURT: Thank you, sir.

All right. Ms. Churnet, other than what has been stated here in open court and whatever is contained in the written Plea Agreement, has the Government made any promises, representations, or guarantees either to the defendant or either defense counsel?

MS. CHURNET: No, Your Honor.

THE COURT: And does the Government waive jury trial?

MS. CHURNET: Yes, Your Honor.

THE COURT: Thank you.

Ms. Soulati, are you satisfied with the representation that your lawyers have provided?

THE DEFENDANT: Yes.

THE COURT: And have you told your lawyers everything you know about your case, especially about any statements or confessions or other evidence you know about that the Government has against you?

THE DEFENDANT: Yes. I've reviewed everything with them.

THE COURT: Okay. Do you believe that your lawyers have fully considered any reasonable defense you may have to the charge?

THE DEFENDANT: Yes.

THE COURT: Do you believe that they have fully advised you concerning this matter?

THE DEFENDANT: Yes.

THE COURT: Do you believe you've had enough time to discuss this matter with your lawyers?

THE DEFENDANT: Yes.

THE COURT: Do you believe that you've understood everything that has happened here today, including everything that has been said by the Court and by the lawyers?

THE DEFENDANT: Yes.

THE COURT: Do you believe that you understand the consequences to you of this decision to plead guilty?

THE DEFENDANT: Yes.

THE COURT: Do you know of any reason why the Court

should not accept your plea of guilty?

THE DEFENDANT: No.

THE COURT: Do you understand, then, that all that is left in your case, if I accept your plea of guilty, is the imposition of sentence, which may include imprisonment? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Having in mind all that we have discussed regarding your plea of guilty, the rights that you would be giving up, the maximum sentence you could receive, is it still your desire to plead guilty?

THE DEFENDANT: Yes.

THE COURT: All right. I want you listen carefully. I'm going to ask the prosecutor to state the facts that the Government would be prepared to prove at trial. Then I'm going to ask you some questions about what she is about to say.

Ms. Churnet?

MS. CHURNET: At all times relevant to this Plea Agreement, the Medicare program was a federal health-care benefit program as defined by Title 18, United States Code, Section 24(b). Title XVIII of the Social Security Act, 1862(a)(1)(A), states that no Medicare payment shall be made for items or services that are not reasonable and necessary for the diagnosis or treatment of an illness or injury or to

improve the functioning of a malformed body. At the relevant time, the local coverage determination for Medicare coverage of cardiovascular stress testing provided that Medicare would not pay for cardiovascular stress testing that was not reasonable and necessary. Under the LCD, cardiovascular stress testing was not reasonable and necessary when the incremental information obtained from a repeat test or from the addition of an echocardiogram to an electrical stress test is of no clinical relevance.

Defendant was the coowner of GCC Imaging, LLC, an independent medical diagnostic testing facility located at 633 East Aerick Street, Inglewood, California 90301, within the Central District of California. GCC Imaging was a Medicare provider that submitted claims for payments to Medicare. Defendant signed the Medicare enrollment application for GCC Imaging in which defendant certified that she would not -- that she would abide by all applicable Medicare laws, regulations, and program instructions, and would not knowingly submit or cause GC Imaging -- GCC Imaging to submit false or fraudulent claims for payment by Medicare. Further, as the coowner of GCC Imaging, defendant made decisions about what diagnostic testing would be conducted at GCC Imaging and was familiar with the codes used for each of the diagnostic tests according -- excuse me -- conducted at GCC Imaging and billed to Medicare. Accordingly, defendant

held a position of public trust with Medicare. Part of the diagnostic testing done at GCC Imaging included cardiovascular stress tests.

Defendant was also the owner of Global Care Cardio, Inc., "GCC," a medical services administrative -- administration entity that did the billing, marketing, and other administration tasks for GCC Imaging, as well as Ronald Seymour Weaver, M.D., Inc., "RSW." RSW was a medical provider with -- which primarily provided external counterpulsation, "ECP", treatments through its two clinics located at 633 East Aerick Street in Inglewood, California, and 1186 Wilshire Boulevard, located in Los Angeles, California, known collectively as the "GCC Clinics," which are within the Central District of California. RSW was owned by codefendant Ronald S. Weaver. GCC Imaging provided cardiovascular stress tests for Medicare beneficiaries referred to GCC Imaging by physicians working at the GCC Clinics.

Defendant and others knowing and willfully caused GCC Imaging to submit fraudulent claims to Medicare for cardiovascular stress tests knowing and intending that Medicare reimburse these claims despite the fact that the defendant knew that the testing was not reasonable and necessary or was a high probability the testing was not reasonable or necessary and deliberately avoided learning the

truth. Defendant and others knew that the reasonableness and necessity of the stress tests is material to Medicare's determination whether to reimburse the claims.

Specifically in furtherance of the scheme, on or about May 5, 2015, defendant caused the submission through GCC Imaging to Medicare of a false and fraudulent claim in the amount of approximately $1500 for cardiovascular stress testing purportedly provided to beneficiary "E.W.," a beneficiary from the GCC Clinics. Also, in furtherance of the scheme, on or about February 5, 2016, defendant caused the submission through GCC Imaging to Medicare of a false and fraudulent claim in the amount of approximately $1500 for cardiovascular stress testing purportedly provided by -- purportedly provided to beneficiary "M.W.," a beneficiary from the GCC Clinics.

At the time of the testing, Medicare beneficiaries "E.W." and "M.W." had already received results of the same test with no significant change in condition, and thus the incremental information obtained from a repeat test or from the addition of an echocardiogram to an electrical stress test was of no clinical relevance. Further, defendant knew or was aware of a high probability that the testing was not reasonable and necessary under the Medicare guidelines based on prior testing performed by GCC Imaging and deliberately avoided learning the truth.

Pursuant to the scheme in which defendant participated between approximately January 7, 2010, and January 31, 2018, GCC Imaging billed Medicare approximately $704,400 in false and fraudulent claims for medically unnecessary diagnostic cardiovascular stress testing referred to GCC Imaging by the physicians at the GCC Clinics with a corresponding allowed amount of approximately $135,298 of which Medicare paid approximately $106,178 for these claims. As the coowner of GCC Imaging, defendant was familiar with Medicare's reimbursement of claims for cardiovascular stress testing and knew that Medicare paid a fixed amount for these tests which was less than the amounts billed by GCC Imaging.

THE COURT: Phew. You know, I apologize. I could have at least asked counsel whether or not you would be willing to stipulate to these three pages so that -- oh, well.

Ms. Soulati, do you understand everything the prosecutor just said?

THE DEFENDANT: Yes.

THE COURT: Everything she said about you and your conduct true and correct?

THE DEFENDANT: Yes.

THE COURT: Are you pleading guilty because you did the things charged in the Indictment?

THE DEFENDANT: Yes.

THE COURT: Are you pleading guilty because you are guilty?

THE DEFENDANT: Yes.

THE COURT: Does either counsel -- or any counsel in the room wish the Court to make any further inquiry in terms of assuring full compliance with the requirements of Rule 11(b)?

MS. CHURNET: No, Your Honor.

MR. JOHNSON: No, Your Honor.

THE COURT: All right. Thank you, counsel.

All right. In the matter of the *United States of America v. Sara Soulati*, Case No. 19-cr-00527-ODW-2, how do you plead --

THE DEFENDANT: Plead guilty.

THE COURT: Yeah. I bet you probably will.

THE DEFENDANT: Oh.

THE COURT: How do you plead to Count 11 of the Indictment charging a violation of 18 U.S.C. Section 1347, which is health-care fraud? How do you plead to Count 11?

THE DEFENDANT: Guilty.

THE COURT: How do you plead to Count 12 of the Indictment -- same case, 19-cr-00527 -- in which you are charged with violation of Title 18, United States Code, Section 1347, again, health-care fraud? How do you plead?

THE DEFENDANT: Guilty.

THE COURT: All right, ma'am. I'm going to make certain findings. If you don't understand what I say or if you disagree with what I say or if you merely wish to speak with your attorney, please interrupt me right away.

In the matter of the *United States v. Soulati*, the Court having questioned the defendant and her counsel on the offer of her plea of guilty to Counts 11 and 12 of the Indictment alleging health-care fraud in violation of Title 18, United States Code, Section 1347, a felony; the defendant and her counsel having advised the Court that they have conferred concerning the offered pleas of guilty and all aspects of the charges against her as well as any defenses she may have; and the Court having observed the defendant's intelligence, demeanor, and attitude while answering questions; and the Court having observed that the defendant does not appear to be under the influence of any medicine, drug, or other substance or factor that might affect her actions or judgment in any manner, the Court finds that the defendant is fully competent and capable of entering an informed plea, that she is aware of the nature of the charges and the consequences of her plea.

The Court further finds that the plea of guilty is knowingly, voluntarily, and intelligently made with a full understanding of those charges and her constitutional rights. The Court further finds that the plea is supported by an

independent factual basis containing each of the essential elements of the offense. The Court accepts the pleas and orders that the pleas be entered.

A written Presentence Report will be prepared by the Probation office to assist the Court in sentencing. You will be asked to provide information for that report, and your attorney may be present if you wish. You and your attorney will be able to read that report and file objections, if you have any, before the sentencing hearing. You and your attorney will be able to speak on your behalf at that hearing.

I emphasize that. I want to hear from you. Okay.

You and your attorney -- correction.

I urge you to consult with your attorney throughout this process so that they may answer any questions you may have.

Sentencing in this matter is set for June 1, 2025, at -- I'm sorry. Oh, '26, at 11:00 a.m.

How much faith do we have that we will be in 5D?

If we're still up here, then my question is will you all come to my funeral?

(Laughter.)

THE COURT: Okay. I guess we'll be back up here.

Any objection to Ms. Soulati remaining free on bond on the same terms and conditions that are currently enforced?

MS. CHURNET: No, Your Honor.

THE COURT: All right. That will be the order, Ms. Soulati. You will remain free on bond on the same terms and conditions. You are personally, individually ordered to return to this Court on June 1st of next year at 11:00 a.m. for sentencing.

Anything further form the Government? Surely I've forgotten something.

MS. CHURNET: No, Your Honor. Thank you.

THE COURT: Thank you.

MR. JOHNSON: Your Honor, I have just one additional request.

THE COURT: Sure.

MR. JOHNSON: Because the sentencing date is in June, it's eight months away, and we anticipated a sentencing date that was much sooner, we -- I spoke with the Government just before the hearing today about modifying the conditions of release. I have come to the Court several times to request a modification in advance before about the internet -- the condition -- the phone condition and the EECP condition. I've talked to the Government about -- we want to consult with Pretrial, without asking today, because it's important that Pretrial weigh in, but I just wanted to alert the Court that we will be filing what I hope to be a stipulation about modifying those conditions because we

wanted to at least get Ms. Soulati back to work in -- sooner than June 1st.

THE COURT: Nothing wrong with persistence.

MR. JOHNSON: I can put -- lay out what I -- why I believe this is appropriate in writing if I --

THE COURT: Yeah, you can do that, but here's my problem: When, you know, trust has been placed in you and then you violate that trust, don't come back a month later asking for the same latitude. It's not going to happen. Now, you and I can have a conversation when this hearing is over, and who knows, maybe you can persuade me that she is a changed woman, but it'll take longer than we have during the course of this hearing.

All right. Anything else?

MR. JOHNSON: No, Your Honor.

THE COURT: All right. Looking forward to talking to you.

MR. JOHNSON: Thank you.

THE COURT: And by the way, all of you lawyers, it's not congratulations, but you have my admiration. You continue to fight the fight under difficult times. You're here, and I think the people of this country would appreciate knowing that. I think they take it for granted. We don't take it for granted here, and I just want to give you the acknowledgement that I know that this is tough, this is got

to really, really, really be tough, and you all have demonstrated that you're made of something really special, and it's a privilege to know and work with you all. Okay.

MULTIPLE SPEAKERS: Thank you, Your Honor.

THE COURT: Now get out of my courtroom.

(Proceedings adjourned at 11:15 a.m.)

///

///

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

| | |
|---|---|
| /s/ Julie Messa | February 14, 2026 |
| Julie Messa, CET**D-403 | Date |
| Transcriber | |